Attorney for Appellant

Robert M. Baker III

Johnson Smith Pence Densborn

 Wright & Heath

Indianapolis, IN

Attorneys for Appellee

James E. Carlberg

Ronald E. Elberger

George T. Patton, Jr.

Bose McKinney & Evans

Indianapolis, IN

IN THE

INDIANA SUPREME COURT

INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., 

Appellant (Defendant below),

v.

JASON CARLBERG b/n/f

JAMES E. CARLBERG and

DONNA S. CARLBERG,

Appellee (Plaintiffs below).

)

) Supreme Court No.

) 29S02-9610-CV-681

)

) Court of Appeals No.

) 29A02-9412-CV-724

)

)

)

APPEAL FROM THE HAMILTON CIRCUIT COURT

The Honorable Richard T. Payne, Special Judge 

Cause No. 29C01-9410-CP-737

ON PETITION TO TRANSFER

SULLIVAN,  Justice.

Disputes involving the rules and enforcement actions of the Indiana High School Athletic Association (“IHSAA”) frequently find their way into state and federal court in Indiana.  In this case, and a companion case, 
Indiana High School Athletic Ass’n v. Reyes
, No. 79S02-9605-CV-361 (Ind. December 19, 1997), we re-examine the approach Indiana courts take to resolving such cases.  We do so here in a case involving a 
student’s
 challenges to enforcement of the IHSAA’s “Transfer Rule” and “Restitution Rule.”  We do so in 
Reyes
 in a case involving a 
high school’s
 challenge to enforcement of the Restitution Rule.

Background

Jason Carlberg lives with his parents near Indianapolis.  After spending his freshman year at Brebeuf Preparatory School where he swam on the varsity swim team, Carlberg transferred to Carmel High School for academic reasons. Carlberg’s transfer prompted enforcement of Rule 19 of the IHSAA,
(footnote: 1) the Transfer Rule, which provides in relevant part that a student who transfers for nonathletic reasons without a change of permanent residence by the student’s parents or guardians has only limited athletic eligibility
(footnote: 2) for 365 days following enrollment.
(footnote: 3)  

Carlberg exhausted the administrative remedies available to him, including a hearing before the IHSAA Executive Committee.  After the IHSAA denied his appeals, Carlberg took his case to court, alleging that application of the Transfer Rule was arbitrary and capricious and violated his constitutional rights.  The trial court enjoined the IHSAA and Carmel High School from enforcing the Transfer Rule, finding that (i) the IHSAA's decision limiting his eligibility was arbitrary and capricious and (ii) “[t]he Transfer Rule operates, as applied in this case, as a violation of Carlberg’s rights under the due process and equal protection clauses of the Fourteenth Amendment of the U.S. Constitution and Article I, Section 12 and Section 23, of the Indiana Constitution.”  (R. at  18.)  The trial court ordered that Carlberg be allowed to participate on the Carmel High School varsity swimming team.  In addition, the trial court enjoined the IHSAA from enforcing its Restitution Rule
(footnote: 4) against Carlberg or Carmel High School. 

While Carmel High School chose not to appeal the trial court’s judgment, the IHSAA presented to the Court of Appeals five different issues for its review:  (1) whether the trial court erred in ignoring the Indiana law of judicial noninterference in the affairs of voluntary associations, and in concluding that the IHSAA’s actions are reviewable; (2) whether the trial court erred in concluding that the IHSAA decision was subject to scrutiny under the Indiana or U.S. Constitution; (3) whether the trial court erred in concluding that the IHSAA decision violated Carlberg’s equal privileges and equal protection rights under the Indiana and U.S. Constitutions; (4) whether the trial court erred in concluding that the IHSAA decision violated Carlberg’s due process rights under the Indiana and U.S. Constitutions; and (5) whether the trial court erred in enjoining the IHSAA from implementing the IHSAA Restitution Rule.  

The Court of Appeals found one of the issues dispositive.  It upheld the trial court's decision, holding that under 
Sturrup v. Mahan
, 261 Ind. 463, 305 N.E.2d 877 (1974), the IHSAA Transfer Rule was overbroad in violation of the Equal Protection Clause of the Fourteenth Amendment of the U. S. Constitution when used to deny varsity eligibility to a student who transferred for nonathletic reasons.  The IHSAA sought and this Court granted transfer on October 24, 1996.
(footnote: 5)

Discussion

I

The IHSAA’s rules and its enforcement thereof are the source of much litigation.  And the number of cases cited in this and the 
Reyes
 opinion illustrate that a not insubstantial number of these cases result in published opinions in the federal and state reporters.  When first presented with such a case in 1959, we held that the courts would not interfere with the enforcement or administration of the constitution or by-laws of the IHSAA.  
State ex rel. Ind. High Sch. Athletic Ass’n v. Lawrence Cir. Ct.
, 240 Ind. 114, 162 N.E.2d 250 (1959).  But twenty-five years ago we began to review IHSAA decisions, 
Haas v. South Bend Community Sch. Corp.
, 259 Ind. 515, 289 N.E.2d 495 (1972), and the courts of Indiana — including our federal cousins — continue to do so to this day.

In the course of that quarter century’s worth of cases, there has been great variation in the claims made and law invoked by the parties and in the method of analysis employed by the reviewing courts.  Some of the cases have treated IHSAA decisions as requiring federal and state constitutional review under the Equal Protection, Due Process, Privileges and Immunities, and Due Course of Law Clauses of the federal and state constitutions.  
See
 
Sturrup
, 261 Ind. 463, 305 N.E.2d 877; 
Haas
, 259 Ind. 515, 289 N.E.2d 495; 
Ind. High Sch. Athletic Ass’n v. Avant
, 650 N.E.2d 1164 (Ind. Ct. App. 1995), 
trans.
 
denied
; 
Thomas v. Greencastle Community Sch. Corp.
, 603 N.E.2d 190 (Ind. Ct. App. 1992); 
Ind. High Sch. Athletic Ass’n v. Schafer
, 598 N.E.2d 540 (Ind. Ct. App. 1992); 
Ruman v. Eskew
, 165 Ind.App. 534, 333 N.E.2d 138 (1975); 
Ind. High Sch. Athletic Ass’n v. Raike
, 164 Ind. App. 169, 329 N.E.2d 66 (1975).

Other cases have treated IHSAA decisions as requiring review under the common law of Indiana.  At least one of the common law cases analyzes the challenged IHSAA decision by applying the extremely deferential standard of review due the internal decisions of private membership organizations, 
Ind. High Sch. Athletic Ass’n v. Reyes
, 659 N.E.2d 158 (Ind. Ct. App. 1995), 
aff’d
 No. 79S02-9605-CV-361 (Ind. December 19, 1997); others apply “an arbitrary and capricious” standard.  
See
 
Avant
, 650 N.E.2d 1164; 
Kriss v. Brown
, 180 Ind. App. 594, 390 N.E.2d 193 (1979); 
Crane v. Ind. High Sch. Athletic Ass’n
, 975 F.2d 1315 (7th Cir. 1992).

Not only is the method of analysis in the common law cases inconsistent, but, at times, even the methods of common law and constitutional analysis merge.  For example, the “arbitrary and capricious” language also appears in the context of review of the constitutionality of an IHSAA decision.  
See
 
Sturrup
, 261 Ind. at 470, 305 N.E.2d at 882; 
Schafer
, 598 N.E.2d at 554 (both holding IHSAA decisions to be arbitrary and capricious under Equal Protection Clause analysis).

This case and the 
Reyes
 case raise many of the analytical issues typical of IHSAA cases and we use them today to re-examine the way in which Indiana courts analyze challenges to IHSAA decisions.  Our re-examination yields the following principles, each of which will be discussed in some detail in either this opinion or in 
Reyes
:

First, the integral role that athletics play in our state’s constitutionally-mandated system of education and the history of judicial scrutiny of IHSAA decisions together dictate that the common law provide for judicial oversight of those decisions.  
See
 part III-A, 
infra
.

Second, the common law will treat the IHSAA as a private membership organization with respect to challenges to its rules and enforcement actions brought by member schools.  
See
 part III-A-1, 
infra
.

Third, the common law will treat the IHSAA as analogous to a government agency with respect to challenges to its rules and enforcement actions brought by students and other non-IHSAA members with standing to do so.  
See
 part III-A-2, 
infra
.

Fourth, rules and decisions of the IHSAA constitute “state action” for the purposes of constitutional review.  
See
 part II, 
infra
.  However, there is no right or interest to participate in interscholastic sports that is entitled to protection under the federal Equal Protection or Due Process Clauses or the state Due Course of Law Clause.  
See
 part IV-C-2, 
infra
.  Thus, scrutiny of IHSAA decisions under the Equal Protection and Due Process Clauses will generally be limited to whether they impinge upon a suspect classification and whether they have a rational basis.  
See
 parts IV-A and IV-C, 
infra
.  Scrutiny under the Privileges and Immunities Clause will generally be limited to whether they have a reasonable basis.  
See
 part IV-B, 
infra
.

II

We turn first to the IHSAA’s claim that the trial court erred in concluding that the IHSAA decision constituted “state action” and was, therefore, subject to scrutiny under the U.S. or Indiana Constitutions.
(footnote: 6)  

It is clearly established that decisions of the IHSAA with respect to student-athletes constitute “state action” for purposes of federal and state constitutional review under the Equal Protection and the Privileges and Immunities Clauses of the federal and state constitutions.  This argument has been decided repeatedly against the IHSAA by the appellate courts of this state for almost a quarter century.  
See
 
Sturrup
, 261 Ind. at 465, 305 N.E.2d at 879; 
Haas
, 259 Ind. at 520, 289 N.E.2d at 498; 
Reyes
, 659 N.E.2d at 167; 
Avant
, 650 N.E.2d at 1170; 
Thomas
, 603 N.E.2d at 192; 
Schafer
, 598 N.E.2d at 548; 
Kriss
, 180 Ind. App. at 604, 390 N.E.2d at 199; 
Raike
, 164 Ind.App. at 173, 329 N.E.2d at 69; 
Crane
, 975 F.2d at 1326 (Posner, J., dissenting) (agreeing that IHSAA decisions are state action and citing 
Nat’l Collegiate Athletic Ass’n  v. Tarkanian
, 488 U.S. 179, 193 n.13 (1988); 
Griffin High Sch. v. Ill. High Sch. Ass’n
, 822 F.2d 671, 674 (7th Cir. 1987)); 
Robbins v. Ind. High Sch. Athletic Ass’n
, 941 F.Supp. 786, 791 (S.D. Ind. 1996); 
Jordan v. Ind. High Sch. Athletic Ass’n
, 813 F.Supp. 1372, 1377 (N.D. Ind. 1993), 
vacated
 
as
 
moot
 
by
 16 F.3d 785 (7th Cir. 1994); 
see
 
also
 
Plummer v. American Inst. of Certified Pub. Accountants
, 97 F.3d 220, 227 (7th Cir. 1996) (
dicta
); 
Freeman v. Sports Car Club of America, Inc.
, 51 F.3d 1358, 1363 (7th Cir. 1995) (
dicta
).

III

A

This Court looks to our state’s historical and contemporary experience and to the prior decisions of our courts to derive the principles necessary to resolve disputes to which neither statute nor constitution speak.  Our common law is thereby established.  We find resolution of challenges to IHSAA rules and enforcement actions well within the ambit of Indiana common law.

Our state constitution specifically recognizes that “knowledge and learning” are “essential to the preservation of a free government” and so mandates a statewide system of free public education.  Ind. Const. art. VIII, § 1.  We believe athletics are an integral part of this constitutionally-mandated process of education.  
See
 
Haas
, 259 Ind. at 528, 289 N.E.2d at 502-503 (DeBruler, J., concurring) (referring to the “substantial educational benefits” which flow from “interscholastic athletic competitions”).

The substantial educational benefits derived from interscholastic athletics, together with the rationale that underlies the determination that IHSAA decisions constitute “state action,” help explain why Indiana courts have been so willing to adjudicate disputes between the IHSAA and parties aggrieved by the association’s decisions.  We reaffirm our common law jurisdiction in this regard today and turn to an examination of the common law principles applicable in IHSAA cases.

A-1

The IHSAA argues that the trial court and Court of Appeals improperly failed to recognize that the Transfer and Restitution Rules are internal rules of the IHSAA subject to the rule of limited judicial interference in the affairs of voluntary membership associations.
(footnote: 7)  The argument continues that, by enjoining the IHSAA from enforcing its Transfer and Restitution Rules, the trial court wrongly interfered with the internal affairs of a voluntary association.

The rule in Indiana is that courts exercise limited interference with the internal affairs and rules of a voluntary membership association:

 

A voluntary association may, without direction or interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its right to interpret and administer the same is as sacred as the right to make them.

State ex rel. Givens v. Super. Ct. of Marion County
, 233 Ind. 235, 238, 117 N.E.2d 553, 555 (1954) (citations omitted).  Therefore, “[a]s a general rule courts will not interfere to control the administration of the constitution and by-laws of such association, or to enforce rights springing therefrom.”  
Id.
 (citations omitted).  In this regard, the “articles of incorporation and bylaws of a not-for-profit corporation are generally considered to be a contract between the corporation and its members and among the members themselves.”  
Lozanoski v. Sarafin
, 485 N.E.2d 669, 671 (Ind. Ct. App. 1985) (citing 
Orchard Ridge Country Club, Inc. v. Schrey
, 470 N.E.2d 780 (Ind. Ct. App. 1984)).

We deal with the law of voluntary associations in more detail in 
Reyes
.  In that case — unlike both this one and most other IHSAA cases — we are not faced with a student athlete’s challenge to an IHSAA decision.  Rather, in 
Reyes
, a member high school challenges IHSAA enforcement of its Restitution Rule.  Although we hold 
infra
 that we will continue to review for arbitrariness and capriciousness IHSAA decisions affecting students, we see little justification for such review when it comes to the IHSAA’s member schools.  As to its member schools, the IHSAA is a voluntary membership association.  Those members have the internal procedures of their own association available to them to adjudicate disputes and, if necessary, change rules or leadership; there is no need for courts to micro-manage these matters.  We hold in 
Reyes
, and reiterate here, that judicial review of IHSAA decisions with respect to its member schools will be limited to those circumstances under which courts review the decisions of voluntary membership associations — fraud, other illegality, or abuse of civil or property rights having their origin elsewhere.  
Reyes
, slip op. at 12-13. 

A-2

When it comes to student challenges, however, we reach a different result.  Perhaps Judge Cummings said it best when he observed that “for a student athlete in public school, membership in IHSAA is not voluntary, and actions of the IHSAA arguably should be held to a stricter standard of judicial review.”  
Freeman
, 51 F.3d at 1363.  Therein lies what is for us a crucial distinction between this case and 
Reyes
: as a student, Carlberg has not voluntarily subjected himself to the rules of the IHSAA; he has no voice in its rules or leadership.  We note as well the relatively short span of time a student spends in high school compared to the amount of time often required for institutional policies to change.  These factors all point to the propriety of judicial scrutiny of IHSAA decisions with respect to student challenges.

But what should be the standard of review?  This Court has never applied 
de
 
novo
 review to IHSAA decisions and emphatically rejects it here.  Rather than 
de
 
novo
 review, since 
Sturrup
, the appellate courts of this state have applied an “arbitrary and capricious” standard in reviewing the decisions of the IHSAA.  
Sturrup
, 261 Ind. at 470, 305 N.E.2d at 882; 
see
 
also
 
Avant
, 650 N.E.2d at 1171 (holding the IHSAA did not act arbitrarily or capriciously in granting student limited eligibility); 
Kriss
, 180 Ind. App. at 609, 390 N.E.2d at 202 (reviewing whether decision of IHSAA was arbitrary and capricious);  
Crane
, 975 F.2d at 1325 (“when the IHSAA acts arbitrarily, . . .  Indiana law tells us we must intervene”).

While the doctrinal basis for judicial review of IHSAA decisions for arbitrariness and capriciousness is not clear from the cases, we believe that it is similar to that which justifies the conclusion that IHSAA decisions constitute “state action.”
(footnote: 8)  The facts that make IHSAA decisions “state action” for purposes of federal and state constitutional analysis also suggest an analogy with government agency decisions:  if IHSAA decisions are “state action,” then they are like government agency decisions.  We conclude that the “arbitrary and capricious” standard of review probably grows out of this similarity.
(footnote: 9)  That is, just as courts review IHSAA decisions in approximately the same way as those of government agencies for purposes of constitutional law, courts review IHSAA decisions in approximately the same way as those of government agencies for purposes of common law.

The analogy between IHSAA decisions and government agency action is not a perfect one, however, and courts must remember that the IHSAA is not a government agency.  Administrative law, the body of law that governs government agency action, is largely of statutory creation and we do not suggest that the IHSAA must conform its procedures to those mandated by the Indiana Administrative Orders and Procedures Act, Ind. Code § 4-21.5-1-1 
et seq.
, or other statutes.  Furthermore, the analogy can become attenuated depending upon the nature of the IHSAA action being challenged.
(footnote: 10)  But we do find substantial justification for our longstanding use of the “arbitrary and capricious” standard of review in the analogy between IHSAA decisions and government agency action and reaffirm it today.

In summary, as a matter of state common law, the courts of Indiana have jurisdiction to review challenges to IHSAA rules and enforcement decisions applicable to a particular student, assuming those challenges are brought by non-IHSAA members with standing.  Such rules and decisions will not be reviewed 
de
 
novo
 but in a manner analogous to judicial review of government agency action, recognizing, however, that the IHSAA is not a government agency and the common law will have to accommodate that difference.

B

The provisions of the IHSAA Transfer Rule at issue in this case apply to a student who changes schools without a corresponding change of residence by the student’s parents.  IHSAA Rule 19-6.2.
(footnote: 11)  Such a student may participate as a member of a junior varsity or freshman team at his or her new school unless the transfer was either primarily for athletic reasons or as a result of undue influence.  IHSAA Rule 19-Definitions; Rule 19-4; Rule 19-6.2.  However, such a student may not participate in interscholastic athletics as a member of a 
varsity
 athletic team during the first 365 days after enrollment unless (i) the student meets one of the special criteria set forth in Rule 19-6.1
(footnote: 12) or (ii) is declared eligible under the IHSAA “Hardship Rule.”
(footnote: 13)

Carlberg agrees that he changed schools without a corresponding change of residence by his parents and that none of the special criteria of Rule 19-6.1 nor the Hardship Rule apply.  For its part, the IHSAA acknowledges that the transfer was neither for primarily athletic reasons nor as a result of undue influence.  Carlberg argues that the IHSAA acted arbitrarily and capriciously when it enforced the Transfer Rule against him where it was undisputed that his transfer was neither primarily for athletic reasons nor as a result of undue influence.

As discussed above, we review the challenged IHSAA decision for arbitrariness or capriciousness.  “Arbitrary and capricious” is a narrow standard of review and the reviewing court may not substitute its judgment for the judgment of the IHSAA.  The rule or decision will be found to be arbitrary and capricious “only where it is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.”  
Dep’t of Natural Resources v. Indiana Coal Council, Inc.
, 542 N.E.2d 1000, 1007 (Ind. 1989) (citation omitted).

We do not find the IHSAA decision that Carlberg was ineligible for varsity athletics for 365 days following his transfer to be “willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.”  First, unlike the IHSAA decision challenged in 
Crane
, here there is no contention that the IHSAA failed to publicize its interpretation of the rule or failed to apply consistently its interpretation of the rule.
(footnote: 14)  

Second, by establishing objective standards for eligibility “governing residence and transfer,” including the provision allowing for only limited eligibility upon a transfer not accompanied by a parental change of residence, Rule 19(c) acts as a deterrent to athletically motivated transfers.  The absence of such a rule might reasonably “invite strategically motivated transfers thinly disguised as transfers in the best (nonathletic) interest of the student.”  
Crane
, 975 F.2d at 1328 (Posner, J., dissenting).

Third, the operation of the rule does not sweep too broadly in its proscription.
(footnote: 15)  While it is true that some students who change schools neither primarily for athletic reasons nor as a result of undue influence are denied varsity eligibility for one year, conducting a factual inquiry into the motivation for every transfer would impose a considerable burden on both the IHSAA and its member schools.  IHSAA Commissioner Gardner testified that to the effect that the IHSAA could not afford to investigate individually each transfer: “Regular detailed investigations by the IHSAA are cost prohibitive, could not be staffed by the current IHSAA personnel, and would have limited success in identifying those athletic transfers thinly disguised as nonathletic transfers.”  (R. at 227-228.)  The IHSAA has balanced these competing interests by (i) creating the thirteen special criteria for immediate eligibility under Rule 19-6.1, (ii) granting immediate eligibility under the Hardship Rule, and (iii) permitting students immediate eligibility at the junior varsity and freshman level.
(footnote: 16)

While we do not find the IHSAA’s application of the Transfer Rule to Carlberg to be either arbitrary or capricious, we believe fairness to Carlberg’s position requires that we give additional consideration to his common law claim.  That is, Carlberg’s claim might fairly be categorized as a challenge to the validity of the Transfer Rule itself, asking whether the IHSAA has the authority to enforce a rule denying varsity athletic eligibility to a student who transfers school whether the transfer is neither primarily for athletic reasons nor as a result of undue influence.  To put the distinction in administrative law terms, Carlberg may be seen to argue that the IHSAA has abused its rulemaking authority rather than its adjudicatory authority.
(footnote: 17)

Judicial review of whether a governmental agency has abused its rulemaking authority is highly deferential.  
Ind. Bd. of Public Welfare v. Tioga Pines Living Center
, 622 N.E.2d 935, 939 (Ind. 1993).  But government agency rulemaking is not exempt from judicial review.  
Ind. Dep’t of State Revenue v. Colpaert Realty Corp
, 231 Ind. 463, 480, 109 N.E.2d 415, 422 (1952).  Among the factors analyzed are whether the challenged agency rule (i) falls within the scope of the agency’s enabling legislation, (ii) is arbitrary or unreasonable, (iii) is consistent and harmonious with the legislative pronouncement under which it operates, and (iv) does not expand or vary the legislature’s enactment.  
In re Associated Sign & Post, Inc.
, 485 N.E.2d 917, 922 (Ind. Ct. App. 1985) (citing cases).  

We have already found that this rule is not arbitrary or unreasonable.  As discussed 
supra
, the IHSAA does not derive its authority directly from the legislature but instead from a delegation of authority from member schools.  As such, the analysis with respect to the three factors that concern authorizing legislation is conducted best by examining the challenged rule’s consistency with the IHSAA’s purpose in general and the purpose of the Transfer Rule in  particular.  

The IHSAA exists “to encourage, regulate, and give direction to wholesome amateur interschool athletic competition between schools who are members.”  IHSAA Articles of Incorporation, art. II; IHSAA By-Laws, art. II.  To further this purpose, the IHSAA Articles and By-Laws mandate that it “determine qualifications of individual contestants . . . and provide written communications to establish standards for eligibility.”  
Id.
   We find authority to take such action, and to delegate that authority to the IHSAA, to be within the powers granted Indiana public school corporations by the legislature.  
Kriss
, 180 Ind. App. at 608, 390 N.E.2d at 201.  We further find Rule 19-6.2 to fall within the scope of, to be consistent and harmonious with, and not to expand or vary this authority.

C

The IHSAA claims that the trial court erred in enjoining it from implementing its Restitution Rule.  The Restitution Rule, IHSAA Rule 17-6, applies where a student who participated in interscholastic athletics in accordance with a court order is ultimately determined to have been ineligible.  In such circumstances, the Rule permits the IHSAA to impose such sanctions as requiring (i) the school to forfeit victories and return any trophies, awards or funds received from tournament play, and (ii) the student to relinquish individual records and performances as well as any awards earned.
(footnote: 18) 

Attempting to prevent enforcement of the Restitution Rule in this case, the trial judge ordered the following in the 
Judgment
: 

The IHSAA and its member schools, their principals, officers, members, agents, servants, employees and all those in active concert or participation with them, shall not act under Rule 17-6 or otherwise against Carmel High School, the Plaintiff, Jason Carlberg, or any school Jason Carlberg plays against because of said school’s acquiescence in this Order, or otherwise engage in any retaliation or retribution against Carmel High School, the Plaintiff, Jason Carlberg, or any school Jason Carlberg plays against because of the issuance of this Order.

(R. at 20.)

Carlberg, in arguing that the trial judge properly enjoined the IHSAA from implementing its Restitution Rule, encourages this Court to follow the reasoning found in 
Avant
, which invalidated the Restitution Rule.  The 
Avant
 court found the Restitution Rule to be manifestly unreasonable.  However, another panel of the Court of Appeals upheld enforcement of the Restitution Rule in 
Indiana High School Athletic Ass’n v. Reyes
, 659 N.E.2d 158, a case which, as previously mentioned, we also decide on transfer today.

Our decision today in 
Reyes
 deals primarily with the Restitution Rule and disposes of two of the issues presented in this case.  First, the 
Avant
 court grounded its decision that the Restitution Rule was “manifestly unreasonable” on the authority of 
Martin v. Ben Davis Conservancy District
, 238 Ind. 502, 153 N.E.2d 125 (1958).  We explain in 
Reyes
 that reliance on 
Martin
 was misplaced and does not provide a basis for invalidating the Restitution Rule.  
Reyes
, slip op. at 9-10.   Second, Carlberg contends that the Restitution Rule encourages disrespect for the institution of the judiciary.  We also address this argument in 
Reyes
 and determine that the enforcement of the Restitution Rule does not impinge upon the judiciary’s function.  
Id.
 at 16.

As we have mentioned, 
Reyes
 involves a challenge to an IHSAA decision by an IHSAA member school.  We hold above and in 
Reyes
 that we review such challenges according to standards for judicial review of the decisions of private membership organizations.  
See
 part III-A-1, 
supra
, and 
Reyes
, slip op. at 14.  However, here we are faced with a student challenge to an IHSAA decision and so must review whether enforcement of the IHSAA Restitution Rule against a student is arbitrary or capricious.
(footnote: 19)  
See
 part III-A-2, 
supra
.

In our view, an IHSAA decision that Carlberg relinquish any swimming record, performances or awards would not be  “willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.”  First, as with the enforcement of the Transfer Rule discussed 
supra
, part III-B (but unlike the IHSAA decision challenged in 
Crane
), here there is no contention that the IHSAA failed to publicize its interpretation of the rule or failed to apply consistently its interpretation of the rule.

Second, we agree with the IHSAA that there is an interest in “restitution and fairness” to schools which and athletes who compete against ineligible students.  While the IHSAA might take a different approach to further this interest, we find the approach taken here not arbitrary or capricious for the same reasons as did our counterparts in Michigan:

It [the restitution rule] is reasonably designed to rectify the competitive inequities that would inevitably occur if schools were permitted without penalty to field ineligible athletes under the protection of a temporary restraining order, pending the outcome of an ultimately unsuccessful legal challenge to one or more eligibility rules.  We find relevant to our decision the fact that [the Michigan version of the restitution rule] does not purport to authorize interference with any court order during the time it remains in effect, but only authorizes restitutive penalties when a temporary restraining order is ultimately dissolved and the challenged eligibility rule remains undisturbed in force . . . .  Furthermore, compliance with MHSAA rules on the part of student athletes is an appropriate and justifiable condition of the privilege of participating in interscholastic athletics under the auspices of the MHSAA.

Cardinal Mooney High Sch. v. Mich. High Sch. Athletic Ass’n
, 467 N.W.2d 21, 24 (Mich. 1991).  
See also
 
Reyes
, 659 N.E.2d at 170.

IV

A

Having reaffirmed that the action of the IHSAA is “state action” for purposes of a student’s challenge of IHSAA action for constitutional muster,
(footnote: 20) we now address the IHSAA’s claim that the trial court erred in concluding that the IHSAA decision violated Carlberg’s rights to equal protection and equal privileges under the U.S. and Indiana Constitutions.

A-1

Carlberg argues that the IHSAA’s enforcement of the Transfer Rule violated his constitutional right to equal protection of the laws as provided by the Fourteenth Amendment.  U.S. Const. amend. XIV, § 1.

“The threshold question for federal equal protection analysis concerns the level of scrutiny.”  
Ind. Dep’t of Envtl. Management v. Chemical Waste Management, Inc.
, 643 N.E.2d 331, 337 (Ind. 1994).  Absent a burden upon the exercise of a constitutionally protected right (none is at stake here — 
see
 part IV-C-2 
infra
) or creation of a suspect class (none is alleged here), the general standard of review of state action challenged under the equal protection clause is the rational basis test.  
Id.
  This test merely requires “that the law be ‘rationally related to a legitimate governmental purpose.’  
Clark v. Jeter
, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465, 471 (1988).”  
Id.
  
E.g.
, 
Griffin High Sch. v. Ill. High Sch. Ass’n
, 822 F.2d 671, 674 (7th Cir. 1987) (holding Illinois High School Association’s version of the transfer rule did not violate federal equal protection).

 The Transfer Rule is designed “[t]o preserve the integrity of interschool athletics and to prevent or minimize recruiting, proselytizing and school ‘jumping’ for athletic reasons . . . .”  Rule C-19-4. We find this to be a legitimate interest and conclude that the Transfer Rule is rationally related to the attainment of this goal.  By establishing objective standards for eligibility “governing residence and transfer,” including the provision allowing for only limited eligibility upon a transfer not accompanied by a parental change of residence, Rule 19(c) acts as a deterrent to athletically motivated transfers.  As mentioned 
supra
, the absence of such a rule might reasonably “invite strategically motivated transfers thinly disguised as transfers in the best (nonathletic) interest of the student.”  
Crane
, 975 F.2d at 1328 (Posner, J., dissenting).

A-2

Upon finding the Transfer Rule to be rationally related to a legitimate governmental interest, under a traditional equal protection analysis, our inquiry would be complete.  However, this Court’s 1974 opinion in 
Sturrup v. Mahan
 extends the inquiry one step further. 

The version of the Transfer Rule in effect at the time of 
Sturrup
 flatly denied eligibility for one year to any student who transferred without the student’s parents actually changing their residence to the new school district.
(footnote: 21)  In the case, Warren Sturrup had moved from Florida to Indiana due to “demoralizing and detrimental conditions” of his home and school; his parents remained in Florida.  
Sturrup
, 261 Ind. at 464, 305 N.E.2d at 878.  Enforcing the Transfer Rule, the IHSAA denied Sturrup eligibility to participate in interscholastic athletics at his new high school.  
Id.
  Sturrup’s guardian responded by seeking an injunction restraining the IHSAA from declaring Sturrup ineligible.  The trial court refused the injunction but the Court of Appeals held that the IHSAA’s Transfer Rule violated the Equal Protection Clause.  On appeal, this Court disagreed with the Court of Appeals’s application of the equal protection methodology and determined that the Transfer Rule, consistent with equal protection, provided for equal treatment of transferees.  However, this Court went on to hold that the rule was unreasonable as it “swe[pt] too broadly in [its] proscription and, hence, violated the Equal Protection Clause of the Fourteenth Amendment.”  
Id.
 at 468, 305 N.E.2d at 881.  We wrote:

The objective of the IHSAA bylaws regarding transferee eligibility is to preserve the integrity of interscholastic athletics by minimizing recruitment, proselyting, and school “jumping” for athletic reasons.  We believe that such practices at the high school level are despicable and odious and should, if possible, be eliminated by any reasonable method available.  These transferee eligibility bylaws are 
reasonably
 related to the above-stated objective.  That is to say, they are designed to and do, in fact, contribute to the realization of that goal.  However, said bylaws are 
unreasonable
 in that they sweep too broadly in their proscription and, hence, violate the Equal Protection Clause of the Fourteenth Amendment.  IHSAA Rules 12 (Section 1) and 22 (Sections 3 and 6) limit eligibility to those who move with their parents free of undue influence and to those whose move is necessitated by “unavoidable circumstances” free of undue influence.  All other transferring student-athletes, who cannot bring themselves within one of the above two categories, are 
automatically
 denied the opportunity to participate in interscholastic athletics for a period of one year.  The bylaws, in essence, create an irrebuttable conclusion of law that all other transferees have been the victims of unscrupulous practices.  This is precisely where the rules sweep too broadly, they create an over-inclusive class—those who move from one school to another for reasons wholly unrelated to athletics are grouped together with those who have been recruited or who have ”jumped” for athletic reasons.  In short, the purported objective of the transferee eligibility rules is to prevent the use of undue influence and school “jumping,” but their practical effect is to severely limit the transferee eligibility in general.  The rules as presently constituted penalize a student-athlete who wishes to transfer for academic or religious reasons or for any number of other legitimate reasons.  Surely, denying eligibility to such transferees in no way furthers IHSAA objectives.

Sturrup
, 261 Ind. at 468-469, 305 N.E.2d at 881.  We concluded, “[T]he IHSAA’s decision to deny Warren Sturrup eligibility—in the absence of any evidence of ‘undue influence’—can only be viewed as patently arbitrary and capricious, and must be reversed.”  
Sturrup
, 261 Ind. at 470, 305 N.E.2d at 882.

The 
Sturrup
 opinion has been the target of much criticism.  
See
 
Thomas
, 603 N.E.2d at 193 (“[T]he 
Sturrup
 court gave no reason for its departure from traditional equal protection analysis and did not provide any guidance as to its future implications . . . .”); 
Schafer
, 598 N.E.2d at  553 (“
Sturrup
 is out of the mainstream of caselaw on equal protection analysis . . . . (citation omitted)); 
Robbins
, 941 F.Supp. at 793 (“Federal equal protection ‘rational basis’ analysis does not contain an ‘overbroad’ component.  Rather, high school transfer rules, like the rule in question, are valid and enforceable.” (citations omitted)); 
Jordan
, 813 F.Supp. at 1381 (refusing to apply 
Sturrup
 overbreadth scrutiny and writing “Indiana’s practice of subjecting equal protection and procedural due process claims to ‘overbreadth scrutiny’ is not harmonious with the analysis of claims brought pursuant to the Fourteenth Amendment of the United States Constitution.”); 
Cooper v. Or. Sch. Activities Ass’n
, 629 P.2d 386, 395 (Or. Ct. App. 1981) (“We are aware that one state court has used overbreadth as a basis for declaring a similar transfer rule to be in violation of the federal Equal Protection Clause. With respect, we do not think that the Indiana court correctly applied federal law.” (citations omitted)); 
Berschback v. Grosse Pointe Pub. Sch. Dist.
, 397 N.W.2d 234, 240 (Mich. Ct. App. 1986) (“The decision[ ] in . . . 
Sturrup
 appear[s] to be [an] anomal[y] in this area of the law. [T]he focus on the ‘overbroad’ and ‘overinclusive’ nature of the rules . . . to find a denial of equal protection departs significantly from traditional equal protection analysis.”), 
appeal
 
denied
, 398 N.W.2d 1 (1986).

In addition, a number of courts have expressly held that various versions of high school association transfer rules do not violate the Equal Protection Clause of the Fourteenth Amendment.  
See
 
e.g.
,  
Griffin High Sch.
, 822 F.2d 671 (holding that transfer rule denying eligibility to students transferring from public to private schools did not violate the students’ rights to due process or equal protection of the laws as provided by the fourteenth amendment); 
In re United States ex. rel. Mo. State High Sch. Activities Ass’n
, 682 F.2d 147 (8th Cir. 1982) (upholding transfer rule denying eligibility for one year after transfer as denying neither equal protection nor due process of the federal Constitution); 
Walsh v. La. High Sch. Athletic Ass’n
, 616 F.2d 152 (5th Cir. 1980) (finding Louisiana’s version of transfer rule not to violate equal protection rights of transferring students); 
Barnhorst v. Mo. State Sch. Activities Ass’n
, 504 F.Supp. 449 (W.D. Mo. 1980) (holding Missouri transfer rule did not violate equal protection); 
Kulovitz v. Ill. High Sch. Ass’n
, 462 F.Supp. 875 (N.D. Ill. 1978) (finding Illinois version of Transfer Rule did not violate equal protection); 
Simkins v. S.D. High Sch. Activities Ass’n
, 434 N.W.2d 367 (S.D. 1989) (holding transfer rule did not violate federal equal protection); 
Chabert v. La. High Sch. Athletic Ass’n
, 323 So. 2d 774 (La. 1975) (holding transfer rule did not violate federal equal protection as rule was uniformly applied, not arbitrary and rationally related to legitimate government interest); 
Berschback
, 397 N.W.2d 234 (denying equal protection challenge to high school transfer rule); 
Whipple v. Or. Sch. Activities Ass’n
, 629 P.2d 384 (Or. Ct. App. 1981) (holding transfer eligibility rule did not deny the student equal protection of the laws or procedural or substantive due process under the fourteenth amendment); 
Cooper
, 629 P.2d at 395  (holding that Oregon’s version of the transfer rule “is constitutionally valid under the federal Constitution.”); 
Genusa v. Holy Cross College
, 389 So. 2d 908 (La. Ct. App. 1980) (finding no equal protection violation where high school transfer rule was not arbitrary, was uniformly applied, and was rationally related to legitimate government interest); 
Ky. High Sch. Athletic Ass’n v. Hopkins County Bd. of Educ.
, 552 S.W.2d 685, 687 (Ky. Ct. App. 1977) (finding transfer rule a “valid regulation intended to eliminate the pernicious practice of recruiting high school athletes.”); 
see
 
also
 Don F. Vaccaro, Annotation, 
Validity of Regulation of Athletic Eligibility of Students Voluntarily Transferring from One School to Another
, 15 A.L.R.4th, 885 (1982 & Supp.).
(footnote: 22) 

Upon reflection, we agree that 
Sturrup v. Mahan
 was wrong to the extent that it included overbreadth as part of federal equal protection analysis and overrule it to that extent.

B

Carlberg also contends that the IHSAA’s enforcement of its Transfer Rule violates his rights under Article 1, Section 23, of the Constitution of the State of Indiana.  The Privileges and Immunities Clause of the Indiana Constitution provides:

The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, cannot equally belong to all citizens.

Ind. Const. art. I, § 23.  For many years, this Court analyzed claims made under the Privileges and Immunities Clause using the same methodology as that applied in federal equal protection analysis.  
See
 part IV-A, 
supra
.  However, in the watershed case of 
Collins v. Day
, 644 N.E.2d 72 (Ind. 1994), we held that the analytical framework required to resolved Privileges and Immunities Clause claims did not include “applying varying degrees of scrutiny for different protected interests,” a key element of federal equal protection analysis.  
Id.
 at 80.  Rather, the same level of scrutiny is applied to analyze the constitutional propriety of “any and all” grants of unequal privileges or  immunities.  
Id.
  That level of scrutiny examines whether “the disparate treatment . . . [is] reasonably related to inherent characteristics which distinguish the unequally treated classes.”  
Id.
  
Collins
 requires that the challenger bear the burden “to negative every reasonable basis for the classification.”  
Id.
 at 81.  This is because of the substantial deference due the enactment.  
Id.
 at 80.  In addition, “the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.”  
Id.

Collins v. Day
 identified two types of Privileges and Immunities Clause claims — claims that seek to invalidate enactments which grant special privileges and claims that seek to impose special burdens.  
Id.
 at 79.  Carlberg’s claim falls into the latter category — the burden of limited eligibility is imposed by the IHSAA upon the class of students who transfer schools where there has been no change in parental residence and who do not qualify under either Rule 19-6.1 or the Hardship Rule.
(footnote: 23)  We find that Carlberg has not carried his burden to  “negative every reasonable basis” for the burden of limited eligibility imposed upon the class of which he is a member.
(footnote: 24)

Under 
Collins
, we must determine whether there are inherent distinctions between transfer students in the class and the general class of students that are reasonably related to imposing the burden of limited eligibility.  We find the “reasonable relationship” test met for several reasons.  First, in furtherance of its goal “[t]o preserve the integrity of interschool athletics and to prevent or minimize recruiting, proselytizing and school ‘jumping’ for athletic reasons,” Rule C-19-4, the IHSAA views the rule as “a deterrent to students who would transfer schools for athletic reasons and to individuals who would seek to recruit student athletes to attend a particular school for the purpose of building athletic strength.”  IHSAA Rule 19 Philosophy.  We find that by establishing objective standards for eligibility “governing residence and transfer,” including the provision allowing for only limited eligibility upon a transfer not accompanied by a parental change of residence, Rule 19(c) acts as a deterrent to athletically motivated transfers. 

Second, the “limited eligibility” provision diminishes the harsh effect of the Transfer Rule by permitting athletic participation but limiting that participation to the junior varsity level.  As noted earlier in this opinion, the IHSAA based the rule on the belief that “athletic transfer rules which permit subvarsity level participation but prohibit varsity level participation, are more likely to discourage athletically motivated transfers and athletic recruitment, and at the same time permit greater athletic participation in a school’s athletic program and eliminate or significantly reduce the athletic advantage enjoyed by a school receiving a transfer student athlete.”

Third, we accept the IHSAA position that it cannot afford to investigate individually each transfer: “Regular detailed investigations by the IHSAA are cost prohibitive, could not be staffed by the current IHSAA personnel, and would have limited success in identifying those athletic transfers thinly disguised as nonathletic transfers.”  (R. at 227-28.)

In 
Collins
, we described our deference to the enactment as follows:

Legislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable.  So long as the classification is based upon substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature; nor will we inquire into the legislative motives prompting such classification.

Collins
, 644 N.E.2d at 80 (
quoting
 
Chaffin v. Nicosia
, 261 Ind. 698, 701, 310 N.E.2d 867, 869 (1974)).  The deterrent value of the rule, the availability of limited eligibility, and the prohibitive cost of monitoring the motives of every transfer are not arbitrary or manifestly unreasonable lines.  The Transfer Rule as applied to Carlberg does not violate the Privileges and Immunities Clause.

C

The trial court concluded that the IHSAA decision to enforce its Transfer Rule violated Carlberg’s due process rights under the Indiana and U.S. Constitutions:
(footnote: 25)  

The Transfer Rule operates, as applied in this case, as a violation of Jason’s rights under the due process and equal protection clauses of the 14th Amendment of the U.S. Constitution and Article I, Section 12 and Section 23, of the Indiana Constitution.

 

(R. at 18.)

C-1

The Due Process Clause and Due Course of Law Clause prohibit state action which deprives a person of life, liberty, or property without the “process” or “course of law” that is due, that is, a fair proceeding.  
Mullane v. Central Hanover Bank & Trust Co.
, 339 U.S. 306, 313 (1950); 
Howard v. Incorporated Town of North Judson
, 661 N.E.2d 549, 553 (1996).  The same analysis is applicable to both the federal and state claims.  
Shook Heavy & Envtl. Constr. Group v. City of Kokomo
, 632 N.E.2d 355, 361 (Ind. 1994).  Predicate to any analysis of whether the process provided was fair is a determination that the claimant had a “protectable interest” — life, liberty, or property — at stake.  
Board of Regents of State Colleges v. Roth
, 408 U.S. 564, 571 (1972); 
Shook Heavy & Envtl. Constr. Group
, 632 N.E.2d at 361.

The trial court made no finding of a protectable interest and Carlberg asserts none on appeal.
(footnote: 26)  

Even assuming that Carlberg was entitled to procedural due process, there is not evidence that he was denied the procedure that is due.  

“An essential principle of due process is that a deprivation of life, liberty, or property ‘be preceded by notice and opportunity for hearing appropriate to the nature of the case.’” 
[Cleveland Bd. of Educ. v.] Loudermill
, 470 U.S. [532,] 542, 105 S.Ct. [1487,] 1493, 84 L.Ed.2d [494,] 503 (quoting 
Mullane v. Central Hanover Bank & Trust Co.,
 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 873 (1950)).

Howard
, 661 N.E.2d at 553.  The IHSAA Rules provide for an appeal of the Commissioner’s investigation and decision to the Executive Committee, a hearing before that Committee (along with general procedures to be followed at such hearing), and a review of that Committee’s decision.  
See
 Rules 17-1 to 17-5.3.  In this case Carlberg was granted a hearing before the IHSAA Executive Committee at which Carlberg presented witnesses and exhibits.  (R. at 56-170.)  Carlberg fails to contend that this procedure was inadequate and the trial court did not discuss the IHSAA procedure.

C-2

While the trial court concluded that enforcement of the Transfer Rule violated Carlberg’s constitutional right to due process, the trial court made no findings that can be interpreted as holding that Carlberg’s constitutional right to procedural due process had been violated.  Therefore, it appears that the trial court’s conclusion was that it was Carlberg’s constitutional right to substantive due process that had been violated.
(footnote: 27)  Indeed, the Due Process Clause, in addition to guaranteeing fair process, also provides heightened protection against state interference with certain fundamental rights and liberty interests.  
Washington v. Glucksberg
, 117 S.Ct. 2258, 2267 (1997) (citing 
Reno v. Flores
, 507 U.S. 292, 301-302 (1993), and 
Planned Parenthood of S.E. Pa. v. Casey
, 505 U.S. 833, 851 (1992)).

But is participation in interscholastic sports one of the rights or interests protected by substantive due process?  We answered this question twenty-five years ago:  “[A] student has no constitutional right to participate in interscholastic athletics,”  
Haas
, 259 Ind. at 521, 289 N.E.2d at 498.  
Accord
, 
Davenport v. Randolph Co. Bd.. of Educ.
, 730 F.2d 1395, 1397 (11th Cir. 1984) (privilege of participation in sports falls outside due process); 
Niles v. Univ. Interscholastic League
, 715 F.2d 1027, 1031 (5th Cir. 1983) (student’s interest in interscholastic activities falls outside of due process rights); 
Hamilton v. Tenn. Secondary Sch. Athletic Ass’n
, 552 F.2d 681, 682 (6th Cir. 1976) (privilege of participation in interscholastic sports is outside due process protections); 
Albach v. Odle
 531 F.2d 983, 984 (10th Cir. 1976) (interscholastic athletic participation not a constitutionally protected right); 
Zehner v. Central Berkshire Reg’l Sch. Dist.
, 921 F.Supp. 850, 862 (D. Mass. 1995) (taking part in interscholastic athletics was not constitutionally protected claim of entitlement); 
Simkins
, 434 N.W.2d at 368 (interscholastic participation is mere expectancy); 
Bruce v. S.C. High Sch. League
, 189 S.E.2d 817, 819 (S.C. 1972) (participation in high school extracurricular activities is a privilege); 
Menke v. Ohio High Sch. Athletic Ass’n
, 441 N.E.2d 620, 623 (Ohio Ct. App. 1981) (holding that student has no fundamental right to participate in high school athletics);  
Whipple
, 629 P.2d at 386 (“While we think that participation in interscholastic sports is an important part of the educational process, we are not persuaded by plaintiff’s argument that it is a liberty or property interest of constitutional proportions.”); 68 Am. Jur. 2d Schools § 259 (1993). 

The United States Supreme Court, in a recent reiteration of the “established method of substantive-due-process analysis,” provided the following “guidepost” for identifying the rights or interests protected by substantive due process:

[W]e have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, “deeply rooted in this Nation’s history and tradition,” [Moore v. East Cleveland, 432 U.S. 494,] 503 (plurality opinion); 
Snyder v. Massachusetts
, 291 U.S. 97, 105 (1934) (“so rooted in the traditions and conscience of our people as to be ranked as fundamental”), and “implicit in the concept of ordered liberty,” such that “neither liberty nor justice would exist if they were sacrificed,” 
Palko v. Connecticut
, 302 U.S. 319, 325, 326 (1937).

Glucksberg
, 117 S.Ct. at 2268.  While recognizing that the importance of participation in interscholastic sports requires scrutiny as a matter of state common law, 
see
 part III-A, 
supra
, we do not find that it rises to the level of the kinds of fundamental rights and liberties described in 
Glucksberg
.  Carlberg has no right under the Due Process Clause to participate in interscholastic sports.

Conclusion

Having granted transfer, we vacate the opinion of the Court of Appeals and reverse the decision of the trial court.

SHEPARD, C.J., and SELBY and BOEHM, JJ., concur.

DICKSON, J., concurs and dissents with separate opinion.

ATTORNEY FOR APPELLANT ATTORNEYS FOR APPELLEE

Robert M. Baker, III James E. Carlberg

Johnson Smith Pence Densborn Ronald E. Elberger

   Wright & Heath George T. Patton, Jr.

Indianapolis, Indiana Bose McKinney & Evans

Indianapolis, Indiana

In The

INDIANA SUPREME COURT

                 INDIANA HIGH SCHOOL ATHLETIC ) 

ASSOCIATION, INC. )

Appellant (Defendant below), ) 

)

v. ) 29S02-9610-CV-681

) JASON CARLBERG b/n/f )

JAMES E. CARLBERG and ) 

DONNA S. CARLBERG, )

Appellees (Plaintiffs below). )

                          ________________________________________________  

APPEAL FROM THE HAMILTON CIRCUIT COURT

The Honorable Richard T. Payne, Special Judge

Cause No. 29C01-9410-CP-737

                        _________________________________________________

On Petition To Transfer

DICKSON, J., concurring and dissenting.  

I agree with the majority that the Indiana State High School Athletics Association (“IHSAA”) is subject to common law oversight in Indiana’s courts and that IHSAA action is equivalent to “state action” subjecting it to judicial enforcement for violations of the federal or state constitutions.  However, I disagree with the majority’s grant of special treatment to the IHSAA as a private membership organization with respect to challenges by member schools.  Also contrary to the majority, I am convinced that the trial court was correct in finding the IHSAA’s attempts to apply its Transfer Rule and its Restitution Rule to be arbitrary and capricious and thus improper.  Finally, I conclude that application of the Transfer Rule violates Article 1, Section 23 of the Indiana Constitution.  I would affirm the judgment of the trial court in favor of Jason Carlberg and against the IHSAA.  

Jason Carlberg attended Brebeuf Preparatory School, a private school, his ninth-grade year and also participated in their swimming program.  However, Jason did not thrive academically in the environment at Brebeuf.
(footnote: 1)  Because Jason’s parents, James and Donna Carlberg, believed that he would do better in a more structured environment, they transferred Jason to the public school in their area for the tenth grade.  The parents’ choice of schools proved to be well-founded, as Jason’s grades improved significantly.  When Jason’s parents sought to obtain an athletic transfer from the IHSAA so that Jason could also compete for a place on the school swimming team, the IHSAA Assistant Commissioner found no athletic motivation in the transfer in schools and this decision was upheld throughout the IHSAA appeals process.  However, the IHSAA denied Jason eligibility for varsity competition under its Transfer Rule.  The trial court later enjoined the IHSAA from preventing Jason from participating in varsity athletics.
(footnote: 2)
 The choices faced by the Carlbergs are choices all parents face: what school and type of education is best for their children.  For some, one facet of that education is athletics.  As noted by the majority, “athletics are an integral part of this constitutionally-mandated process of education.”  Slip op. at 11.  Physical fitness lowers mortality rates, promotes cardiovascular and muscular fitness, generates a general feeling of well-being, and reduces the symptoms of depression and anxiety.  
U.S. Dep’t of Health and Human Servs., Physical Activity and Health: A Report of the Surgeon General
 85-136 (1996).  The “potentially positive outcomes of organized sport competition” have been documented.  
Wilbert Marcellus Leonard II, A Sociological Perspective of Sport
 124 (1993).  Among these outcomes are enhanced decision-making skills, self-image, character, morality, independence, and opportunities for youth to experience a sense of achievement.  
Id.
  Witnesses for both sides also testified that athletics provided several benefits, including “learning how to be part of a team, the process of goal setting and working hard, individually and within a team, to achieve goals, and how to deal with successes and overcome the failures provided in sports.”  Record at 12.

In addition, for the student who is not academically inclined, participation in sports requires a certain amount of academic progress and provides motivation for the athlete to meet those standards in order to compete.  For example, to compete in collegiate athletics in Division I or II of the National College Athletic Association (“NCAA”), incoming freshmen must meet certain academic criteria, which include a scale of certain entrance exam scores and minimum grades in core classes taken in high school.  
National Collegiate Athletic Association, 1996-97 NCAA Manual
 166-173 (1996).  This can have a motivating effect on those high school athletes who wish to continue their athletic participation into college.  Athletics can also be an avenue for economically underprivileged students to attend college on a scholarship when they might not otherwise afford to do so.  The availability of such scholarships is significant.  Schools participating in Division I of the NCAA spent an average of almost one-and-a-half million dollars per school in athletic scholarships for the academic year 1993-94.  
Fact File: Athletics Participation and Scholarships at 257 NCAA Division I Institutions
, 
The Chronicle of Higher Education
, Oct. 26, 1994, at A51.  

Throughout Indiana’s history, government has been assigned a special responsibility with respect to education.  Explicit requirements were included in the Northwest Ordinance,
(footnote: 3) which governed the Indiana Territory before statehood, and our State’s initial 1816 Constitution.
(footnote: 4)  Our present Constitution, ratified in 1851, provides: 

Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; it shall be the duty of the General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all.  

Ind. Const.
 art. 8, § 1.

The Indiana General Assembly has basically delegated the governance of the athletics component of education to the schools themselves.  The schools have then sub-delegated that governance to the IHSAA.  The former IHSAA Assistant Commissioner, Robert Gardner, acknowledged that the IHSAA is supported by tax dollars and revenue from the participating schools.  As recognized by the majority, we have long viewed IHSAA determinations as state action for the purpose of constitutional analysis. 

I agree with the majority that decisions of the IHSAA constitute “state action” for purposes of federal and state constitutional review.  The majority is further correct in its decision to apply the “arbitrary and capricious” standard of review to determine challenges to IHSAA action.  “Judicial review thus serves as an important check on the legality of the action that agencies may undertake. . . . Judicial review of [] statutory and constitutional issues is fully in accord with the institutional expertise of the judiciary and the role that courts are expected to play in our constitutional system.”  
Alfred C. Aman,  Jr. & William T. Mayton, Administrative Law 435 (1993). 

I dissent, however, to the limitations imposed upon this review by the majority.  To describe the IHSAA as a voluntary association apart from its integral relation to public schools contradicts reality.  The IHSAA is the only governing body for high school athletics in the state of Indiana.  Every public high school and approximately thirty private schools are members of the IHSAA.  In effect, if a school wants to offer any kind of interscholastic athletic program, it has only two choices:  the IHSAA and its rules or nothing.  I cannot agree that the IHSAA should be considered a “voluntary” association not subject to meaningful judicial review in its disputes with “member” schools.  On one hand, the majority correctly recognizes IHSAA action as “state action” and therefore reviewable under administrative law concepts as to its actions against individual students.  However, by declaring the IHSAA to be a voluntary association, the majority effectively immunizes it from judicial oversight as to its disputes with individual schools.  Because the majority would apply essentially the same arbitrary and capricious standard to the IHSAA that it applies to administrative agencies, slip op. at 19 ( 
quoting
 
Dep’t of Natural Resources v. Indiana Coal Council, Inc.
, 542 N.E.2d 1000, 1007 (Ind. 1989), 
cert. denied
, 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990)), and because the IHSAA is a quasi-state actor, prudence and reason favor application of the same standard regardless of whether we are reviewing challenges from students or schools.  

The trial court found that the Transfer Rule and the IHSAA’s rulings were arbitrary and capricious.  These findings should not be reversed unless clearly erroneous.  Ind.Trial Rule 52(A).  The trial court’s findings were not erroneous.  To the contrary, I am convinced that the IHSAA’s attempts to enforce the Transfer Rule and the Restitution Rule in this case are clearly arbitrary and capricious.

The IHSAA’s action against Jason is blatantly contrary to the expressed purpose of the IHSAA Transfer Rule.  The IHSAA rules provide that, “Standards governing residence and transfer are a necessary prerequisite to participation in interschool activities because: . . . (5) 
they keep the focus of students
 and educators 
on the fact that they attend school to receive an education first
 and participate in athletics second.”  Record at 170 (citing I.H.S.A.A. Rule 19(c)(5)) (emphasis added).  The trial court found that the Carlbergs have always put Jason’s education first and the IHSAA officials “indicated they had no reason to believe Jason Carlberg’s transfer was athletically motivated.”  Record at 11.  Thus, the arbitrariness of the IHSAA’s application of its rule becomes apparent in the present case:  A rule purporting to limit athletically-motivated transfers and promote education as the primary value of school in fact punishes a student whom the IHSAA found did 
not
 transfer for an athletic reason and where the uncontradicted evidence points only to academic reasons for the transfer.  Common sense instructs that application of the Transfer Rule to limit Jason’s opportunities for participation would be blatantly arbitrary and capricious.  The trial court was correct in making such a finding.

I must also dissent from the majority view upholding the IHSAA Restitution Rule and authorizing its application to punish the school which permitted Jason to participate in compliance with a court order.  As noted above, I would not grant the IHSAA any preferred treatment as a voluntary association, but would rather require it to refrain from arbitrary and capricious actions as to its member schools and participating student-athletes.

While the Restitution Rule purports to protect the interests of those who competed against a team with an ineligible player, it wholly fails to protect the interests of an equally innocent set of actors:  those teammates with whom the student participated and the schools they represented.  When, as in this case, a trial court enjoins the IHSAA from prohibiting participation, neither the ineligible player’s teammates nor his school are free to ignore a court order.  Punishing Jason’s innocent teammates and his school is manifestly arbitrary and capricious.

Moreover, in individual sports such as swimming, where individual scores are aggregated to achieve a final team score, a rule which permits the revocation and confiscation of all the awards earned by teammates and the school can only be punitive, not restitution-oriented.  It would be a relatively simple matter to recompute the total score minus the contribution of the ineligible athlete to see whether the team should have placed where it did or whether it should receive a lesser award or any award at all.  The IHSAA should not be allowed to impose such a manifestly arbitrary and capricious rule without demonstrating the practical inability to make a provision for the other team members who were eligible to play. 

Furthermore, our system of justice has always favored compliance with injunctions and court orders, even ones which are eventually found to be erroneous.  Had the school disregarded the trial court’s order, even if the injunction or order was later found erroneous for non-jurisdictional reasons, a contempt citation could have issued.  
Carson v. Ross
, 509 N.E.2d 239, 243 (Ind.Ct.App. 1987).  To punish a school or the ineligible player’s teammates for complying with a court order is wrong.  
Cf. 
 
Indiana High Sch. Athletic Ass’n v. Avant
, 650 N.E.2d 1164, 1171 (Ind.Ct.App. 1995) (finding the Restitution Rule manifestly unreasonable because it punishes parties who comply with court orders).

I further dissent because I believe that the IHSAA Transfer Rule as applied to Carlberg violates the Privileges and Immunities Clause of the Indiana Constitution.  This clause imposes two requirements upon legislative action that grants unequal privileges or immunities to differing classes of persons:  

First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes.  Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.  

Collins v. Day
, 644 N.E.2d 72, 80 (Ind. 1994).  In determining whether statutes violate this provision, courts must exercise substantial deference to legislative discretion.  
Id.
 

Looking to the first part of our Equal Privileges and Immunities analysis, the threshold inquiry is whether any disparate treatment exists.  In this case, the disparate treatment is obvious.  The role of athletics in education parallels, in important ways, other decisions made by parents and students concerning what classes and activities will suit the students’ abilities, interests, and preparation for the future.  Unfortunately, under the majority opinion, parents and students making decisions about athletic opportunities are not treated the same as those making decisions about other, non-athletic, opportunities.  The IHSAA Transfer Rule treats parents and athletically-gifted students differently than other parents and students seeking to maximize the educational opportunities available in non-athletic areas of education; such as, computer technology, foreign language, drama and performing arts, interscholastic debate competition, and marching band.  Parents and students are generally free to make family decisions and perhaps incur considerable sacrifice to relocate in order to enroll the student in a school believed to be best suited to the student’s individual abilities.  But the IHSAA Transfer Rule denies student-athletes and their parents this same privilege.  Likewise, the Transfer Rule provides disparate treatment as to high school athletes who transfer in contrast with those who do not, as is evident in the present case.  Jason Carlberg, a high school athlete who transferred for concededly non-athletic reasons, would only have been allowed to compete at the junior varsity level while the athletes who had not transferred were allowed to compete at the varsity level.

However, this disparate treatment of student athletes and their parents--in contrast to the freedom of students and parents to transfer schools to experience the best available programs in specialized academic areas or in competitive or performing arts--is not justified by any inherent difference between the two classes of persons.  Nor is there any inherent difference reasonably related to the disparate treatment imposed upon the student athlete who transfers as opposed to the student who does not.  While 
Collins
 cautions that courts “must accord considerable deference to the manner in which the legislature has balanced the competing interests involved,” 
id.
, the special privileges and immunities affected by the Transfer Rule are not the product of any legislative policy judgment.  The rule here was not adopted by the Indiana General Assembly, with all the attendant debate and political accountability normally involved in legislative action.  When the IHSAA was given the authority by the schools to make rules binding upon Indiana’s public schools and students, the legislature did not enact any limitations reflective of any public policy determination.  Courts need not give deference to legislative discretion when, as here, none was exercised.
(footnote: 5)  

Notwithstanding the absence of any legislative policy discretion requiring deference in this case, I observe that, by prohibiting eligibility for varsity participation for those who were not expressly found to have transferred for athletic reasons, the Transfer Rule cannot be reasonably related to the disparate treatment given to the two classes.  If the rule is designed to prevent 
athletically
-motivated transfers, then a rule which prohibits involvement in varsity sports because a student transferred for 
non-athletic
 reasons is not reasonably related to the disparate treatment.  Thus, the enormous breadth of the rule clearly undermines any argument that the rule is reasonably related to providing significant deterrent value in preventing athletic transfers.  

Finally, the majority finds that the limited ability of the IHSAA to make individual determinations may justify its use of such a broad rule.  However, as a matter of our equal privileges and immunities jurisprudence, we do not consider the relative costs to the institution of providing such determinations.  We only look to whether privileges are extended equally to the same class of persons and whether different treatments are inherently justified.  This analysis is not to be confused with the current federal due process analysis under 
Mathews v. Eldridge
, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which does weigh the burden of providing the additional services. 

In responding to Carlberg’s claim that IHSAA’s enforcement of the Transfer Rule violated the Due Course of Law provision of the Indiana Constitution, the majority is, I believe, mistaken in suggesting that our state constitutional due course of law analysis is necessarily co-extensive with federal due process jurisprudence.  The majority recites that “the same analysis is applicable to both the federal and state claims.”  Slip op. at 40 (citing 
Shook Heavy & Envtl. Constr. Group v. City of Kokomo
, 632 N.E.2d 355, 361 (Ind. 1994)).  Notwithstanding our language “explicitly extending” federal analysis to Article 1, Section 12 of the Indiana Constitution, this Court did not engage in any analysis and construction of Article 1, Section 12 of the Indiana Constitution.  
Shook Heavy
, 632 N.E.2d at 361.  The Indiana constitutional claim in 
Shook
 was not raised until oral argument before this Court.  We noted that because the “issue was not briefed, we decline to give it extensive treatment.”  
Id.
 at 360 (footnote omitted).  We therefore merely looked to federal due process concepts in our disposition of the state constitutional claim “[b]ecause these are familiar principles in Indiana jurisprudence.”  
Id.
 at 361.  Because of the absence of any argument in 
Shook
 regarding the history and previous treatment of Article 1, Section 12 of the Indiana Constitution, our utilization of the federal analysis therein should be seen as merely a convenient guide for cursory analysis and should not be read to dispositively hold that the federal and state analyses are identical.

I would affirm the judgment of the trial court.

FOOTNOTES
1:
Organized under the laws of this state, the IHSAA is a voluntary, not-for-profit corporation comprised of members including public, private, parochial and institutional schools in this state.  The member schools associated through the IHSAA adopt rules regarding eligibility and similar matters related to interscholastic athletic competition.  Included among these eligibility rules is Rule 19, the “Transfer Rule,” and another rule at issue in this case, Rule 17-6, the “Restitution Rule.”

2:
The Transfer Rule defines “limited eligibility” as  follows:  “A student who is declared to have limited eligibility shall be eligible to participate immediately in all interschool athletics, provided, however, during the first 365 days after enrollment, such student may not participate in interschool athletics as a member of a varsity athletic team.”  Rule 19 — Eligibility and Transfer.

3:
The provisions of the Transfer Rule applicable to transfer eligibility without a change of residence by the parent are as follows:

C-19-6 TRANSFER ELIGIBILITY WITHOUT CHANGE OF RESIDENCE BY PARENT(S) / GUARDIAN(S)

19-6.1

IMMEDIATE ELIGIBILITY

A student who transfers without a corresponding change of residence to a new district or territory by the student’s parent(s)/guardian(s) may be declared immediately eligible provided there has been provided to the Association reliable, credible and probative evidence that one or more of the following criteria has been met.

a. The transfer is a result of the student being a ward of a court.

b. The student transfers with a corresponding change of residence by the student into a new district or territory to reside with a parent.  Moves between divorced or separated parents may meet this criteria; however, multiple moves between such parents will not be approved unless the reasons for the move are outside the control of the parents and student and are significant, substantial and/or compelling. 

c. The student transfers with a corresponding change of residence by the student into a new district or territory to reside with a guardian or in a foster home which is a result of:

(1) the student becoming an orphan;

(2) reasons outside the control of the student and the student’s parent(s) and the student’s guardian(s) and/or the student’s foster parent(s) which are significant, substantial and/or compelling.  A guardian appointed for the purpose of making a student eligible will not be accepted.

d. The student’s former school closed.

e. The student’s former school is not accredited by the state accrediting agency in the state where the school is located.

f. The student transferred pursuant to a school board mandate.

g. The student enrolled and/or attended, in error, a wrong school and a transfer application is made promptly when discovered.

h. The student transferred from a correctional school.

i. The student is emancipated and has established a bona fide residence in a new district or territory.

j. The student did not participate in any interschool contest as a representative of another school during the preceding 365 days.

k. The student returns to an IHSAA member school from a non-member school and resides with the same parent and/or legal guardian.

l. Boarding school students are not required to meet the criteria of Rule 19-6.1.

m. The student is a foreign exchange student and meets the foreign exchange student criteria.

19-6.2

LIMITED ELIGIBILITY (See Definition)

A student who transfers without a corresponding change of residence to a new district or territory by the student’s parent(s)/guardian(s) may be declared to have limited eligibility.

Indiana High School Athletic Association, Inc., 
By-Laws and Articles of Incorporation
 55 (1994-95).

4:
The IHSAA Restitution Rule, “in the interest of restitution and fairness to competing schools,” requires students to forfeit individual records, performances and awards achieved during participation by the ineligible student pursuant to an injunction or restraining order which is subsequently vacated, stayed, reversed or determined to have been unjustified.  Rule 17-6.

5:
Upon the granting of transfer, this Court faces all of the issues originally raised before the Court of Appeals.  
See
 Ind.Appellate Rule 11(B)(3); 
Kimberlin v. DeLong
, 637 N.E.2d 121, 123 (Ind. 1994).

6:
Although we do not address Carlberg’s constitutional claims until part IV, 
infra
, we discuss the “state action” question here because it is helpful to our common law analysis to follow in part III.

7:
This argument appears on its face inconsistent with the notion that IHSAA decisions constitute “state action.”  However, the “state action” determination was made as part of an analysis of claims of IHSAA violation of constitutional law, not common law.  It is at least theoretically possible that IHSAA decisions could constitute state action for purposes of constitutional law but private action for purposes of common law.  We assume this distinction for the moment but will return to it shortly.

8:
The IHSAA’s “very existence is entirely dependent upon the absolute cooperation and support of the public school systems of the State of Indiana.”  
Haas v. South Bend Community Sch. Corp.
, 259 Ind. 515, 520, 289 N.E.2d 495, 498 (1972).  That cooperation and support is derived from the lawful delegation from public schools to the IHSAA of authority conferred upon public schools by the legislature.  
Kriss v. Brown
, 180 Ind. App. 594, 608, 390 N.E.2d 193, 201 (1979).  We have noted in support of the conclusion that IHSAA decisions constitute  “state action” that (i) the salaries of most the principals and coaches involved in interscholastic athletics are derived from tax funds; (ii) most of the athletic contests are held in, or on, athletic facilities which have been constructed and maintained with tax funds; and (iii) IHSAA rules are adopted by tax-supported schools and their enforcement may have a substantial impact upon the rights of students enrolled in these tax supported institutions.  
Haas
, 259 Ind. at 520, 289 N.E.2d at 498.

9:
After all, “arbitrary and capricious” is a standard of judicial review invoked frequently in administrative law.  
See
 
State Bd. of Tax Comm’rs v. Jewell Grain Co., Inc.
, 556 N.E.2d 920, 921 (Ind. 1990); 
see
 
also
 Ind. Code § 4-21.5-5-14(1) (1993) (court shall grant relief to one prejudiced by agency action that is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law”).

10:
To illustrate, consider the familiar categorization of government agency action as either adjudication or rulemaking.  
See
 
Ind. Bd. of Public Welfare v. Tioga Pines Living Center, Ind.
, 622 N.E.2d 935, 939 (Ind. 1993).  The analogy between IHSAA decisions and government agency action seems to us to work well when the IHSAA decision is adjudicatory.  But it runs into a conceptual difficulty when the IHSAA decision is rulemaking.  This is because courts review challenges to the legitimacy of government agency rules by reference to the agency’s grant of authority from the legislature in its enabling legislation.  
See
 
Ind. Dep’t of State Revenue v. Colpaert Realty Corp.
, 231 Ind. 463, 479-80, 109 N.E.2d 415, 422-23 (1952).  But the IHSAA has no enabling legislation.  Its grant of authority from the legislature is indirect.  
See
 
Kriss
, 180 Ind.App. at 608, 390 N.E.2d at 201 (IHSAA power is derived from the lawful delegation from public schools to the IHSAA of authority conferred upon public schools by the legislature).

11:
The text of Rule 19-6.2 is set forth in footnote 3, 
supra
.

12:
The text of the special criteria of Rule 19-6.1 are set forth in footnote 3, 
supra
.  They include situations such as where the transfer is a result of the student being a ward of the court, the student’s former school having been closed, and the student meeting the criteria for foreign exchange students.

13:
The relevant provisions of the IHSAA Hardship Rule read as follows:

17-8.1

GENERAL

The Commissioner or his designee or the Committee shall have the authority to set aside the effect of any Rule when, in the opinion of the Commissioner or his designee or the Committee:

a. Strict enforcement of the rule in the particular case will not serve to accomplish the purpose of the Rule;

b. The spirit of the Rule has not been violated; and

c. There exists in the particular case circumstances showing an undue hardship which would result from enforcement of the Rule.

17-8.2

APPLICATION

Although the Commissioner or his designee or the Committee may make determination of hardship without application by the affected party, generally, a hardship situation should be brought to the attention of the Commissioner or his designee or the Committee by an affected party.  Only the Association may grant a hardship exception; neither a principal nor a member school may grant a hardship exception.  In bringing a hardship situation to the attention of the Commissioner or his designee or the Committee, an affected party shall make application in writing and shall contain all facts pertaining to the case, including sufficient data to make it possible to reach a decision without further investigation.  All correspondence and documents pertinent to the case shall be submitted.

17-8.3

TIME TO MAKE APPLICATION

An affected party, or party who wishes to bring a hardship situation to the attention of the Commissioner or his designee or Committee, shall do so at the time a matter is referred to the Association under rule 17-2.4 or Rule 17-2.5 or, if the matter is not so referred, during the investigation, but prior to a decision, under rule 17-3; for good cause shown and/or because of circumstances outside the control of the affected party, an affected party may bring a hardship situation to the attention of the Committee during the review process under Rule 17-4 for the first time.  Under any circumstance, however, the appropriate time for a hardship application is when the hardship situation is discovered.  Request for a hardship exception should always be made prior to any action or participation by the student, coach, school or affected party under circumstances which would constitute either ineligibility or a Rule or decision violation.

17-8.4

GENERAL CONSIDERATION

a. Ordinary cases shall not be considered hardship; rather, the conditions which cause a violation of a Rule, a disregard of a decision or directive made under these Rules, or the failure to meet the eligibility requirements must be beyond the control of the school, the coach, the student, the parents and/or the affected party.

b. Injury, illness or accidents which cause a student to fail to meet a basic requirement are possible causes for a hardship consideration.

c. Likewise, a change in financial condition of the student or a student’s family may be considered a hardship, however, such conditions or changes in conditions must be permanent, substantial and significantly beyond the control of the student or the student’s family.

14:
In 
Crane v. Ind. High Sch. Athletic Ass’n
, at issue was the applicability of the Transfer Rule where a student moved from the residence of one of his divorced parents to the other but neither parent moved.  The Seventh Circuit found that IHSAA officials had no published guidelines on the applicability of the Transfer Rule to children of divorced parents and that IHSAA officials gave inconsistent testimony as to its operation in such situations.  
Crane v. Ind. High Sch. Athletic Ass’n
, 975 F.2d 1315, 1325 (7th Cir. 1992).  We observe that Rule 19-6.1 has now been amended to set forth the movement of a child from home of one divorced parent to another as a special criteria permitting immediate eligibility for varsity competition.  Rule 19-6.1-b.

15:
In 
Sturrup v. Mahan
, we held that the Equal Protection Clause of the Fourteenth Amendment was violated by IHSAA rules that “swe[pt] too broadly in their proscription.”  
Sturrup v. Mahan
, 261 Ind. 463, 468,  305 N.E.2d 877, 881 (1974). While we repudiate this overbreadth analysis 
infra
 as a matter of Equal Protection Clause analysis, it remains a useful analytical tool for helping determine whether an IHSAA decision is arbitrary or capricious as a matter of common law.

16:
Commissioner Gardner states, “It is the belief of the IHSAA that the majority of athletically motivated transfers and cases of athletic recruitment occur among student athletes who play at a varsity level, and therefore, athletic transfer rules which permit subvarsity level participation but prohibit varsity level participation, are more likely to discourage athletically motivated transfers and athletic recruitment, and at the same time permit greater athletic participation in a school’s athletic program and eliminate or significantly reduce the athletic advantage enjoyed by a school receiving a transfer student athlete.”  (
Affidavit in Support of Motion for Summary Judgment
 R. at 228.)  

17:
See
 note 10, 
supra
.

18:
The Restitution Rule, in part, reads as follows:

Rule 17-6

PARTICIPATION BY VIRTUE OF COURT ACTION

If a student is ineligible according to Association Rules but is permitted to participate in interschool competition contrary to Association Rules but in accordance with the terms of a court restraining order or injunction against the student’s school and/or the Association and the injunction is subsequently voluntarily vacated, stayed, reversed or it is finally determined by the courts that injunctive relief is not or was not justified, any one or more of the following action(s) against such school in the interest of restitution and fairness to competing schools shall be taken:

a. Require individual or team records and performances achieved during participation by such ineligible student be vacated or stricken;

b. Require team victories be forfeited to opponents;

c. Require team or individual awards earned be returned to the Association; and/or

d. If the school has received or would receive any funds from an Association tournament series in which the ineligible individual has participated, require the school forfeit its share of net receipts from such competition, and if said receipts have not been distributed, authorize the withholding of such receipts by the Association.

19:
While Carlberg does not argue that the IHSAA’s enforcement of the Restitution Rule would be arbitrary and capricious, we find it necessary to address the issue as it would form an alternative theory or basis for affirming the part of the trial court’s judgment at issue.  
See
 
Havert v. Caldwell
, 452 N.E.2d 154, 157 (1983) (on appellate review, trial court’s judgment will be affirmed if sustainable on any theory or basis found in the record).

20:
A finding of state action is critical to our analysis under the Fourteenth Amendment Equal Protection and Due Process Clauses:

Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment’s Due Process Clause, and private conduct against which the Amendment affords no shield, no matter how unfair that conduct may be. 
Shelley v. Kraemer
, 334 U.S. 1, 13 (1948); see 
Jackson v. Metropolitan Edison Co.
, 419 U.S. 345, 349 (1974).  As a general matter the protections of the Fourteenth Amendment do not extend to “private conduct abridging individual rights.”  
Burton v. Wilmington Parking Authority
, 365 U.S. 715, 722 (1961).

Nat’l Collegiate Athletic Ass’n v. Tarkanian
, 488 U.S. 179, 191 (1988). 

21:
The 
Sturrup
 Court tells us that the Transfer Rule in effect at the time of that decision read as follows:

IHSAA Rule 12, Section 1

No student, who has been enrolled as a high school student in any member school, shall be permitted to participate in any inter-school contest as a member of another member school until he has been enrolled in such school for one calendar year, unless the parents of such student actually change their residence to the second school district.  In the latter case, the student will be as eligible as he was in the school from which he withdrew.

Rule 22, Sections 3 and 6

Section 3—If a student transfers from one member school to another member school and his parents actually change their residence to the second school district, he shall be as eligible as he was in the school from which he withdrew.

Section 6—Unavoidable Change of Residence
.  A student who, because of unavoidable circumstances such as the death of the parents or guardian, finds it necessary to change residence from one school district to another in order to have a home, may be declared eligible by the Board of Control, provided the principal of each member school files a statement, with supporting evidence, with the Board of control as proof that the change was necessary and that no undue influence was attached to the case in any way.  If any action of a legal agency is to be submitted as evidence of unavoidable change of residence, such action should be taken prior to the student’s enrollment in the new school.

Sturrup
, 261 Ind. at 464, 305 N.E.2d at 878-79 (emphasis in original).

22:
We did find one instance in which a court struck down a high school transfer rule as  overinclusive.  The Supreme Court of Texas found the Texas version of the transfer eligibility rule to deny students equal protection of the laws and held that the purpose of the transfer rule was to discourage the recruitment of high school athletes and that “the overinclusiveness and harshness of the transfer rule [was] not rationally related to the purpose of preventing recruitment.”  
Sullivan v. University Interscholastic League
, 616 S.W.2d 170, 173 (Tex. 1981).  The 
Sullivan
 court noted that the version of a transfer eligibility rule attacked in that case provided that a student who represented a high school in football or basketball the previous school year was ineligible to participate in that sport at the new school for a period of one calendar year (listing exceptions). 
Sullivan
, 616 S.W.2d at 171 n.2.  The transfer rule in question categorized transfer students strictly (transfers or nontransfers) and allowed for very limited exceptions.  The version of the IHSAA Transfer Rule at issue today is not so narrowly drawn. 

The impact of the overinclusive language of 
Sullivan
 is a topic of discussion in Texas courts.  
See
 
Lucas v. United States
, 757 S.W.2d 687, 707 n.5 (Tex. 1988) (Phillips, C.J., dissenting) (“
Sullivan
 is reminiscent of intermediate scrutiny” and “
Sullivan
 apparently departed from settled federal constitutional principles in reaching its result.” (citations omitted)); 
Texas Workers’ Compensation Comm’ v. Garcia
, 862 S.W.2d 61, 75-76 n.5 (Tex. Ct. App. 1993) (“There is some debate whether Texas has fashioned a stricter test for section 3 [Tex. Const.] than the federal ‘rational basis’ test.” (citations omitted)), 
rev’d
 
by
 893 S.W.2d 504 (1995).

23:
Just as the IHSAA Transfer Rule constitutes “state action” for purposes of federal constitutional scrutiny, so too does it for state constitutional analysis.  
Haas
, 259 Ind. at 526, 289 N.E.2d at 501; 
Ind. High Sch. Athletic Ass’n v. Avant
, 650 N.E.2d 1164, 1170 & n.6 (Ind. Ct. App. 1995) (collecting cases), 
trans.
 
denied
.

24:
The second requirement of the 
Collins
 analysis, that “any privileged classification must be open to any and all persons who share the inherent characteristics which distinguish and justify the classification,” 
Collins v. Day
, 644 N.E.2d 72, 79 (Ind. 1994), is not likely to be violated where the claim is of a special burden, rather than a special privilege.  In any event, Carlberg claims no violation in this regard and we find none.

25:
The Due Process Clause of the Fourteenth Amendment provides:

 

No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . . 

U.S. Const. amend. 14, § 1.

The Due Course of Law Clause of the Indiana Constitution provides:

All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. 

Ind. Const. art. I, § 12.

26:
The closest the trial court came to identifying a possible protectable interest was its reference to an athletic scholarship in its 
Conclusion of Law
 supporting entry of the injunction: 

7. Enforcement of IHSAA’s ruling will cause Jason to suffer immediate injury, loss and damage including the opportunity to earn a scholarship, deprive him of interaction with other students, an opportunity to learn discipline, time management, leadership, social skills, the value of hard work and respect for authority as well as the unique opportunity of competing at the varsity level in the state competitions.  An injunction preventing the continued enforcement of the IHSAA’s decision will prevent this immediate and irreparable harm to Jason while inflicting no harm upon the Defendants.

(R. at 18-19.)  However, the possibility of a scholarship is not a protectable property interest.  
See
 
e.g.
, 
Schaill v. Tippecanoe County School Corp.
, 679 F.Supp. 833, 855 (N.D. Ind. 1988) (“[S]tudent’s aspirations for a college scholarship from high school sports . . . do not establish any legally protected interests.”), 
aff’d
, 864 F.2d 1309 (7th Cir. 1988); 
Brands v. Sheldon Community Sch.
, 671 F.Supp. 627, 631 (N.D. Iowa 1987) (no protectable interest in expectation of earning college scholarship);  
Scott v. Kilpatrick
, 237 So. 2d 652, 656 (Ala. 1970) (speculative possibility of acquiring scholarship is not a property right).

27:
Neither of the parties suggest that there is a substantive, as well as procedural, protection afforded by Article I, section 12, of the Indiana Constitution.

1:
Many of the facts are established in the factual findings of the trial court, which are accorded deference by this Court, Indiana Trial Rule 52(A), and are unchallenged in this appeal.

2:
That the school permitted Jason to participate at the varsity level is not surprising--the trial court ordered that Jason “shall be allowed to participate on the varsity swimming team,” Record at 19, and enjoined the IHSAA from imposing on the high school any “penalty or adverse action.”  Record at 20.  School reliance on a court order in allowing an athlete to play was a major factor in the Court of Appeals opinion which held the Restitution Rule manifestly unreasonable.  
Indiana High Sch. Athletic Ass’n, Inc. v. Avant
, 650 N.E.2d 1164, 1171 (Ind.Ct.App. 1995). 

3:
“Religion, morality, and knowledge, being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged.”  
An Ordinance for the government of the United States northwest of the river Ohio
, July 13, 1787, art. 3, 
reprinted in
 1 
Constitution Making in Indiana
 1780-1850, § 10, at 31-32 (Charles Kettleborough, 1971).

4:
“Knowledge and learning, generally diffused through a community, being essential to the preservation of a free government, and spreading the opportunities and advantages of education through the various parts of the country being highly conducive to this end, . . . The general assembly shall, from time to time, pass such laws as shall be calculated to encourage intellectual . . . improvement, by allowing . . . for the promotion and improvement of arts, sciences . . . and to countenance and encourage the principles of humanity, industry and morality.”  
Ind. Const. of 1816
 art. 9, § 1.  

“It shall be the duty of the general assembly, as soon as circumstances will permit, to provide, by law, for a general system of education . . . wherein tuition shall be gratis, and equally open to all.”  
Ind. Const. of 1816
 art. 9, § 2.

5:
Because of the past willingness of Indiana courts to meaningfully review the actions and decisions of the IHSAA, the General Assembly may have heretofore found it unnecessary to exercise its constitutional authority to provide guidance and limits upon IHSAA action, and specific remedies for conflict resolution.  With its decision today, the majority effectively withdraws this assurance of substantial judicial oversight and thereby invites legislative review and regulation of the IHSAA.