Jamie **MUELLER**, Vicki Evans, Appellants–Defendants,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0503–CR–172.

Court of Appeals of Indiana.

Nov. 16, 2005.

Kathleen M. Sweeney, Indianapolis, for Appellants.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Jamie Mueller and Vickie Evans appeal the trial court's refusal to require the Marion County Prosecutor ("the Prosecutor")[1] to permit them to participate in a pretrial diversion program. We reverse and remand.

### Issue

The dispositive issue before us is whether requiring payment of a fee as an absolute condition of participating in a pretrial diversion program violates the Fourteenth Amendment to the United States Constitution.[2]

### Facts

On March 25, 2004, Jamie Mueller was charged with being a minor in a tavern, a Class C misdemeanor. At her initial hearing, she was found to be indigent and was appointed a public defender. On March 29, 2004, the Prosecutor offered to allow Mueller to participate in that office's pretrial diversion program, and Mueller accepted. Among other things, Mueller admitted guilt, agreed to commit no crime during the next two years, agreed to at-

---

1. The State of Indiana is the nominal party in this case. Because this case concerns only this prosecutor's pretrial diversion program, we refer to him as the party throughout the opinion.

2. Because of our resolution of this issue, we do not address Mueller's and Evans's arguments under the Indiana Constitution.

tend a behavior modification class, and agreed to pay an $80 class fee and a $150 user fee, for a total of $230. The trial court specifically found "it credible that Mueller believed she could pay the fees initially but then was unable to pay." Mueller App. p. 37. The Prosecutor sought to withdraw the pretrial diversion agreement on the sole basis of Mueller's inability to pay the fees.

On October 20, 2004, Vicki Evans was charged with conversion, a Class A misdemeanor. Like Mueller, Evans also was appointed a public defender because she was found indigent. The Prosecutor also offered Evans the opportunity to participate in a pretrial diversion program. However, unlike Mueller, Evans never executed a pretrial diversion agreement because she did not believe she could pay the required $230 in fees.

Mueller and Evans requested that the trial court require the Prosecutor to allow them to participate in the pretrial diversion program, notwithstanding their inability to pay the $230 in fees. The trial court found that at least at the time of Mueller's and Evans's cases, the Prosecutor's practice and policy in implementing his pretrial diversion program was that persons who were unable to pay the fees were denied entry into the program or were removed from the program if they could not pay the fees.[3] The State does not challenge the accuracy of this finding on appeal. Nonetheless, the trial court concluded that requiring payment of the fees as a condition of participation in the pretrial diversion program was a rational requirement that violated neither the United States nor Indiana Constitutions. Mueller and Evans now appeal.

### Analysis

We begin by reviewing the pretrial diversion statute, now found at Indiana Code Section 33–39–1–8. The statute, as recently amended, provides in part:

(c) A prosecuting attorney may withhold prosecution against an accused person if:

(1) the person is charged with a misdemeanor;

(2) the person agrees to conditions of a pretrial diversion program offered by the prosecuting attorney;

(3) the terms of the agreement are recorded in an instrument signed by the person and the prosecuting attorney and filed in the court in which the charge is pending; and

(4) the prosecuting attorney electronically transmits information required by the prosecuting attorneys council concerning the withheld prosecution to the prosecuting attorneys council, in a manner and format designated by the prosecuting attorneys council.

(d) An agreement under subsection (c) *may* include conditions that the person:

(1) pay to the clerk of the court an initial user's fee and monthly user's fees in the amounts specified in IC 33–37–4–1 . . . .

(e) An agreement under subsection (c)(2) *may* include other provisions reasonably related to the defendant's rehabilitation, if approved by the court.

(Emphases added). As our emphases make clear, the pretrial diversion statute does not require the payment of fees, either statutorily-denominated or otherwise, as an absolute condition of participation in a pretrial diversion program. Mueller and Evans concede the statute is constitutional on its face. The undisputed evidence be-

---

**3.** There appears to be some evidence that the $80 class fee sometimes would be waived, but never the $150 user fee.

fore us, however, is that at the time of Mueller's and Evans's cases, the Prosecutor here had implemented a policy of unconditionally requiring the payment of certain fees as a condition of participation in his pretrial diversion program. The question, therefore, is whether this was an unconstitutional application of an otherwise constitutional statute with respect to indigent defendants.

It has been said, "The determination of whom to prosecute is within the sole discretion of the prosecutor, and the court may not substitute its discretion for that of the prosecutor." *Deurloo v. State,* 690 N.E.2d 1210, 1211 (Ind.Ct.App.1998) (citing *Johnson v. State,* 675 N.E.2d 678, 683 (Ind.1996)). This principle was applied in *Deurloo,* in which two judges of this court held that "the organization and administration of a pretrial diversion program is left entirely to the prosecutor." *Id.; but see id.* at 1213 (Sullivan, J., concurring) (stating that trial court had erred "in its conclusion that it totally lacked responsibility or authority with regard to the [diversion] agreement or with respect to whether any of the conditions of the agreement had been violated.")

■ However, it is also clear that a prosecutor's charging decisions cannot be made in a way that violates the United States Constitution.

Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" *so long as* "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, *or other arbitrary classification.*"

*Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978) (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962))

(emphases added). "Where a law or the application of a law is challenged on constitutional grounds, the judiciary has the authority, as well as the duty, to explore the constitutional ramifications of the law." *City of Anderson v. Associated Furniture & Appliances, Inc.,* 423 N.E.2d 293, 295 (Ind.1981). Thus, in this case we have the authority, and the duty, to assess whether it is constitutional for a prosecutor to decide to prosecute some individuals and not others on the sole distinguishing basis that some are able to pay pretrial diversion fees and others are not. This assumes that the two groups are otherwise similarly situated, i.e. individuals in both groups possess identical characteristics with respect to their eligibility to participate in a pretrial diversion program except for their respective abilities to pay the required fees. There is nothing in the record to suggest there was any other reason for Mueller and Evans to be excluded from the pretrial diversion program, except for their asserted inability to pay the fees.

■ The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Generally, when assessing a claim that government action has violated the Fourteenth Amendment, the threshold question concerns the level of scrutiny of the action. *Indiana High School Athletic Ass'n, Inc. v. Carlberg by Carlberg,* 694 N.E.2d 222, 236 (Ind.1997). Absent a burden upon the exercise of a constitutionally protected right or creation of a suspect class, the general standard of review of state action challenged under the Fourteenth Amendment is the rational basis

test. *Id.* This merely requires "that the law be 'rationally related to a legitimate governmental purpose.'" *Id.* (quoting *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988)). There is no argument here that there is a constitutional right to participate in a pre-trial diversion program. Additionally, we acknowledge that indigency alone has not been identified as a suspect classification for Fourteenth Amendment purposes. *See Maher v. Roe,* 432 U.S. 464, 471, 97 S.Ct. 2376, 2381, 53 L.Ed.2d 484 (1977).

These general principles aside, however, there has developed a substantial independent body of precedent that has specifically addressed whether the government's charging of fees for access to a government-provided benefit is permissible under the Fourteenth Amendment, as applied to persons unable to pay the fees. The starting point in this analysis is *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). There, the United States Supreme Court held that the State of Illinois violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment when it refused to allow indigent criminal defendants appealing their convictions to obtain free trial transcripts, despite the fact that allowing the appeal in the first place is not a requirement of the federal constitution. *Id.* at 18–19, 76 S.Ct. at 590–91. Although *Griffin* dealt specifically with criminal appeals, it contains much language that suggests broader application to the criminal justice system generally, and we quote Justice Black writing for the plurality at length:

> Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal. This hope, at least in part, brought about in 1215 the royal concessions of Magna Charta: "To no one will we sell, to no one will we refuse, or delay, right or justice. * * * No free man shall be taken or imprisoned, or disseised, or outlawed, or exiled, or anywise destroyed; nor shall we go upon him nor send upon him, but by the lawful judgment of his peers or by the law of the land." These pledges were unquestionably steps toward a fairer and more nearly equal application of criminal justice. In this tradition, our own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system-all people charged with crime must, so far as the law is concerned, "stand on an equality before the bar of justice in every American court."

> Surely no one would contend that either a State or the Federal Government could constitutionally provide that defendants unable to pay court costs in advance should be denied the right to plead not guilty or to defend themselves in court. Such a law would make the constitutional promise of a fair trial a worthless thing. Notice, the right to be heard, and the right to counsel would under such circumstances be meaningless promises to the poor. In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color. Plainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence and could not be used as an excuse to deprive a defendant of a fair trial.

*Id.* at 16–18, 76 S.Ct. at 589–90 (internal citations and footnotes omitted).

Interestingly, Justice Black also noted with approval the Illinois Constitution,

which originally provided that every person in that state "ought to obtain right and justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." *Id.* at 18, 76 S.Ct. at 590. This is very similar to language found in the Indiana Constitution: "Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Ind. Const. art. 1, § 12. In conclusion, Justice Black said, "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin*, 351 U.S. at 19, 76 S.Ct. at 591. Justice Frankfurter added in a separate concurrence: "If [the government] has a general policy of allowing criminal appeals, it cannot make lack of means an effective bar to the exercise of this opportunity." *Id.* at 24, 76 S.Ct. at 593 (Frankfurter, J., concurring).

*Griffin* has not been applied across the board to all cases in which a government has provided a benefit contingent upon the payment of a fee. In *Boddie v. Connecticut*, 401 U.S. 371, 382–83, 91 S.Ct. 780, 788–89, 28 L.Ed.2d 113 (1971), the Supreme Court did apply *Griffin* in holding that Connecticut could not prevent indigent persons from seeking a divorce based solely on their inability to pay a court filing fee. However, two years later in *United States v. Kras*, 409 U.S. 434, 444–45, 93 S.Ct. 631, 637–38, 34 L.Ed.2d 626 (1973), the Supreme Court declined to extend *Boddie* and held that it was not unconstitutional to require payment of a fee as a prerequisite of filing for bankruptcy, even as applied to indigent persons. The *Kras* court specifically noted that the interest concerned in obtaining a bankruptcy discharge of debts did not "rise to the same constitutional level" as obtaining a divorce. *Id.; see also Ortwein v. Schwab*, 410 U.S. 656, 659, 93 S.Ct. 1172, 1174, 35 L.Ed.2d 572 (1973) (holding that interest

in appealing welfare benefits determination had "far less constitutional significance than the interest of the *Boddie* appellants" and, therefore, requiring filing fee for such appeal, even of indigent persons, was constitutional).

More recently, the Supreme Court summarized the law regarding payment of fees to obtain a government-provided benefit as follows:

> [W]e do not question the general rule, stated in *Ortwein*, that fee requirements ordinarily are examined only for rationality. The State's need for revenue to offset costs, in the mine run of cases, satisfies the rationality requirement; States are not forced by the Constitution to adjust all tolls to account for "disparity in material circumstances." But our cases solidly establish two exceptions to that general rule. The basic right to participate in political processes as voters and candidates cannot be limited to those who can pay for a license. Nor may access to judicial processes in cases criminal or "quasi criminal in nature," turn on ability to pay.

*M.L.B. v. S.L.J.*, 519 U.S. 102, 123–24, 117 S.Ct. 555, 567–68, 136 L.Ed.2d 473 (1996) (internal citations and footnotes omitted).

Also relevant to our analysis today is *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). *Bearden* begins by acknowledging, with citation to *Griffin*, "This Court has long been sensitive to the treatment of indigents in our criminal justice system." *Id.* at 660, 103 S.Ct. at 2068. The Court went on to hold that before revoking a convicted defendant's probation or parole for failing to pay a fine or restitution, the Fourteenth Amendment required an inquiry into the reasons for that failure. Justice O'Connor continued:

If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id.* at 672–73, 103 S.Ct. at 2072–73.[4]

It appears that only one state court has addressed a question similar to the one we are faced with today, and that was the Supreme Court of Mississippi in *Moody v. State,* 716 So.2d 562 (Miss.1998). In that case, a prosecutor had established a "bad check" program in which any person indicted for illegally "bouncing" a check was charged an automatic $500 fine plus restitution, payable immediately, in exchange for which the indictment would be *nolle prossed.* If a person was unable to pay, the prosecution proceeded. Relying primarily on *Bearden,* the Mississippi court held:

The automatic nature of the fine is what makes it discriminating to the poor, in that only the poor will face jail time. We hold that an indigent's equal protec-

tion rights are violated when all potential defendants are offered one way to avoid prosecution and that one way is to pay a fine, and there is no determination as to an individual's ability to pay such a fine. Subjecting one to a jail term merely because he cannot afford to pay a fine, due to no fault of his own, is unconstitutional.

*Id.* at 565. The State here attempts to distinguish *Moody* because more than a fee or fine is required to avoid prosecution under the Prosecutor's pretrial diversion program, such as attending a class and not committing any crime for two years. This is a distinction without a difference. The underlying premise is the same in both cases: one group who meets certain criteria can completely avoid prosecution and possible conviction for an offense and all the undeniable travails that go along with them, while another group is not allowed to do so, with the sole difference being ability or inability to pay a fee.

■ We take the following from *Griffin, Bearden, M.L.B.,* and *Moody.* Completely foreclosing a benefit that the State offers to defendants in the criminal justice system, based solely on an inability to pay a fee or fine, violates the Fourteenth Amendment. In the context of the criminal justice system, the argument that the fees help offset the costs of running the pretrial diversion program is not sufficient to establish a rational basis for distinguishing between the indigent and those able to pay the fees. *See M.L.B.,* 519 U.S. at 123–24, 117 S.Ct. at 567–68. As such, precluding Mueller and Evans from participating in the Prosecutor's pretrial diversion program based solely on their asserted inability to pay the $230 in fees violated their

---

**4.** The Indiana Supreme Court has also held "that when fines or costs are imposed upon an indigent defendant, such a person may not be imprisoned for failure to pay the fines or costs." *Whedon v. State,* 765 N.E.2d 1276, 1279 (Ind.2002).

rights under the United States Constitution.

■ Making indigency determinations is something that courts frequently do, with respect to whether a defendant is entitled to a public defender or whether he or she may be incarcerated for failure to pay court costs, fees, or a fine associated with a criminal conviction.[5] It should be no great burden for a court to make such indigency determinations in pretrial diversion cases, should a prosecutor not exercise his or her discretion independently to waive payment of any or all fees without court involvement. If a defendant is found to be unable to pay the fee, either by a prosecutor acting alone or upon a court's determination, he or she must be offered an alternative to full payment of the fee. This could take the form of complete waiver of the fee, partial waiver, implementation of a reasonable payment schedule, replacement of the fee with a non-financial (but reasonable) requirement such as community service,[6] or some combination of partial waiver and a non-financial requirement. It is unclear from the record whether the trial court here made a final determination as to whether Mueller and Evans were, in fact, indigent with respect to paying the fees, and we remand for consideration of that issue.

Prosecutors have clearly recognized and very broad discretion in the performance of their duties and, more specifically, in making decisions as to which persons arrested for crimes they will actually charge and prosecute to the fullest extent of the law. That discretion, however, is not absolute. The concept that our criminal justice system should be operated as far as reasonably possible without regard to a defendant's financial resources is axiomatic and beyond dispute. Allowing some defendants and not others to completely avoid prosecution and a potential criminal conviction, based solely on their respective abilities to pay certain fees, violates this fundamental principle.[7] We are reminded of these words spoken by then-Attorney General Robert Jackson in 1940: "[T]he citizen's safety lies in the prosecutor who tempers zeal with human kindness, who seeks truth and not victims, who serves the law and not factional purposes, and who approaches his task with humility." *See The Federal Prosecutor,* http://www.roberthja ckson.org/Man/the man2–7–6–1 (last visited October 25, 2005).

### Conclusion

A practice of requiring payment of a fee as an absolute condition of participation in a pretrial diversion program discriminates against indigent persons in violation of the Fourteenth Amendment. The trial court

---

5. We observe that a finding of indigency with respect to court-appointed counsel may not necessarily be dispositive of whether a defendant can afford to pay a fine. *See Ratliff v. State,* 741 N.E.2d 424, 435 (Ind.Ct.App.2000), *trans. denied.*

6. With respect to community service, for example, a "reasonable" amount of time could be calculated by approximating the monetary value of the service provided, i.e. what a person providing a similar service might ordinarily be paid per hour.

7. The State argues in its brief that the $230 in fees is "hardly excessive" and, "That money

easily could be saved by eliminating expenditures on items such as alcohol, cigarettes, cable television, cell phone usage, and eating out in restaurants." Appellee's Br. p. 13 n. 3. Undoubtedly, not every person who claims to be indigent turns out to be so, and the number of persons unable to pay these fees may be a small percentage of persons applying for the Prosecutor's pretrial diversion program. However, we do not doubt the existence of extreme poverty in society and it is inappropriate to presume that persons in dire financial straits have wasted their money on drinking, smoking, cable television, cell phones, or dining out.

erred in concluding otherwise. We reverse and remand for further consideration of Mueller's and Evans's indigency, if necessary.

Reversed and remanded.

CRONE, J., and NAJAM, J., concur.