## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 19 2019, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dylan Lee Cheesman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 19, 2019

Court of Appeals Case No.
18A-CR-1925

Appeal from the Vigo Superior
Court

The Honorable John T. Roach,
Judge.

Trial Court Cause No.
84D01-1703-F6-717

**Tavitas, Judge.**

# Case Summary

Dylan Cheesman appeals the sentence imposed after the trial court revoked his probation. We affirm.

# Issue

Cheesman raises one issue, which we restate as whether the trial court properly ordered Cheesman to serve the balance of his sentence in the Vigo County Jail.

# Facts

Cheesman pleaded guilty to auto theft, a Level 6 felony. On August 23, 2017, the trial court sentenced Cheesman to two years in the Indiana Department of Correction with his sentence suspended to probation.

On January 19, 2018, the probation department filed a notice of probation violation and alleged that Cheesman had been charged with battery, a Class A misdemeanor; criminal trespass, a Class A misdemeanor; possession of paraphernalia, a Class C misdemeanor; operating a motor vehicle without a license, a Class C misdemeanor; and driving while suspended, a Class A misdemeanor. On March 21, 2018, the probation department filed an amended notice of probation violation. The probation department alleged that, in addition to the earlier charges, Cheesman had: (1) tested positive for THC on February 20, 2018; (2) tested positive for spice on February 20, 2018, March 2, 2018, and March 13, 2018; (3) failed to take drug screens on February 9, 2018, February 12, 2018, and March 8, 2018; (4) failed to call the drug screen

notification system on six occasions in February and March 2018; and (5) failed to keep an appointment for an assessment at Harbor Lights on March 6, 2018.

[5] After a revocation hearing, the trial court found that Cheesman had violated his probation. On May 21, 2018, the trial court "sentence[d] [Cheesman] to time served" in the Vigo County Jail from March 26, 2018, through May 21, 2018. Appellant's App. Vol. II p. 68. The trial court returned Cheesman to probation on May 21, 2018, and ordered Cheesman, as a part of probation, to: (1) participate in a daily drug screen call-in protocol; (2) schedule an alcohol and drug evaluation and follow all treatment recommendations; and (3) reside with his mother.

[6] On June 11, 2018, the probation department filed another notice of probation violation. The probation department alleged that Cheesman had: (1) tested positive for spice on May 25, 2018, and June 1, 2018; (2) failed to call the drug screen notification system on June 9, 2018, June 10, 2018, and June 11, 2018; and (3) failed to report for a drug screen on June 7, 2018.

[7] At the revocation hearing on July 2, 2018, the parties discussed the possibility of Cheesman participating in work release. Cheesman reported that his father would help him with the work release fees. The trial court stated:

> If [Cheesman is] going to admit [the violation] based on this agreement that he's going to work release, I'm telling you that . . . I haven't decided that I'm accepting that he is going to work release. So if you're going to admit, you have to admit knowing that you probably have six (6) months in the Vigo County Jail.

Tr. Vol. II p. 7. The trial court found that Cheesman had violated the terms of his probation and, pursuant to Cheesman's attorney's request, ordered "an evaluation by Vigo County Community Corrections for defendant's possible placement in Work Release . . . ." Appellant's App. Vol. II p. 78.

[8]     The community corrections evaluation determined that Cheesman was unemployed, that his family could not help with the fees, and that Cheesman was not an appropriate candidate for work release because he could not afford the program. At the dispositional hearing on July 16, 2018, the State requested that Cheesman serve the balance of his sentence in the Vigo County Jail. The State noted that the trial court made it clear during the May 21, 2018 hearing that, if Cheesman "messed up this chance, he would just go to sit in the Vigo County Jail." Tr. Vol. II p. 19. The trial court then stated:

> I'm not going to repeat the conversation we had the last time on the probation violation because the State just summarized it. We gave you every chance. We gave you another chance to get out and do the treatment. Didn't [sic] take advantage of that opportunity. I don't have anywhere else to put you. You're not appropriate for community corrections. I'm not sentencing you to time served. That's not appropriate either. So the balance of your time is in the Vigo County Jail. I will put on here that with six (6) weeks left, you should be put in Jail Linkage, but at this point, the balance of your time is in the Vigo County Jail.

*Id.* at 21. The trial court revoked Cheesman's probation and ordered him to serve the balance of his suspended sentence in the Vigo County Jail. The trial

court ordered Cheesman to serve the last six weeks of his sentence in the Jail Linkage Program.

## Analysis

[9] Cheesman argues that the trial court abused its discretion by ordering him to serve the balance of his suspended sentence in the Vigo County Jail. "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Where, like here, the trial court finds that a defendant has violated a condition of his probation, it may: (1) continue the probation with or without modifying the probation conditions; (2) extend the probationary period for up to one year; or (3) revoke the probation and order the execution of all or part of the sentence suspended at the initial hearing. Ind. Code § 35-38-2-3(h). A trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. *Prewitt*, 878 N.E.2d at 188. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[10] Cheesman does not dispute that his placement in community corrections is a decision made at the "sole discretion of the trial court." Appellant's Br. p. 7. But Cheesman argues that the trial court "cannot exercise its discretion in an arbitrary manner." *Id.* According to Cheesman, he could not be denied the opportunity to participate in work release merely because he was indigent.

Cheesman contends that, but for his inability to pay work release fees, "he would have been eligible and appropriate for the program." *Id.* at 8.

[11] In support of his argument, Cheesman relies on *Mueller v. State*, 837 N.E.2d 198 (Ind. Ct. App. 2005), where we considered whether requiring the payment of a fee before a defendant could participate in a pretrial diversion program violated the United States Constitution. We held: "Completely foreclosing a benefit that the State offers to defendants in the criminal justice system, based solely on an inability to pay a fee or fine, violates the Fourteenth Amendment." *Mueller*, 837 N.E.2d at 204. "As such, precluding [the defendants] from participating in the Prosecutor's pretrial diversion program based solely on their asserted inability to pay the $230 in fees violated their rights under the United States Constitution." *Id.* at 204-05.

[12] *Mueller* is distinguishable from this case. Cheesman was not denied the opportunity to participate in work release solely based on his inability to pay the fees associated with the program. Although Cheesman was only on probation for a few months, he repeatedly and significantly violated the terms of his probation. In May 2018, after the trial court found that Cheesman had violated his probation, the trial court warned Cheesman that if he "messed up this chance, he would just go to sit in the Vigo County Jail." Tr. Vol. II p. 19. Within days, Cheesman had again violated his probation. At the revocation hearing, the trial court expressed reluctance to put Cheesman on work release but allowed him to obtain an evaluation. At the dispositional hearing two weeks later, the trial court sentenced Cheesman to serve his suspended sentence

in the county jail, not because Cheesman lacked the funds for work release, but because Cheesman had failed to take advantage of every opportunity given to him. The trial court stated: "We gave you every chance. We gave you another chance to get out and do the treatment. Didn't [sic] take advantage of that opportunity. I don't have anywhere else to put you. You're not appropriate for community corrections." *Id.* at 21.

[13] The trial court was not required to give all the reasons that it did not grant Cheesman's request for work release. We will not speculate that the denial was based on lack of funds, especially given the trial court's statements at the revocation and dispositional hearings. Rather, the trial court's statements indicate that it found work release inappropriate based on Cheesman's repeated probation violations. Under these circumstances, we do not find *Mueller* applicable. Our Supreme Court has held:

> Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants.

*Prewitt*, 878 N.E.2d at 188. The trial court had "considerable leeway" in deciding the consequences of Cheesman's probation violations. *Id.* Given Cheesman's repeated probation violations, we do not find the imposition of the suspended sentence to be an abuse of discretion. *See, e.g., McKnight v. State*, 787 N.E.2d 888, 893 (Ind. Ct. App. 2003) (holding that the trial court properly

ordered the defendant to serve seven years of his previously-suspended sentence after finding four probation violations).

## Conclusion

[14] The trial court did not abuse its discretion by imposing Cheesman's suspended sentence. We affirm.

[15] Affirmed.

Baker, J., and May, J., concur.